METROPOLITAN CASUALTY INSURANCE COMPANY OF NEW YORK, Appellant, v. BASFORD, Insurance Commissioner, Respondent.

(139 N. W. 795.)

1. **Insurance—State Control—Foreign Insurance Company—"Employer's Liability" Insurance—"Accident and Casualty" Insurance.**

   Laws 1911, Chap. 176, purporting in its title to amend certain acts "pertaining to the capital stock for * * * employer's liability, * * * accident and casualty insurance companies," although seeming to recognize a distinction between two classes of insurance, yet as matter of fact and law employer's liability insurance is but a branch of accident and casualty insurance; and **held**, that appellant, a foreign insurance company, being authorized by its charter to do an accident and casualty insurance business, and not expressly forbidden that of employer's liability, the state commissioner of insurance may assume that it is authorized to engage in the latter class of business.

2. **Foreign Statute—Constructive Notice.**

   The state commissioner of insurance will not, nor will the people of this state take notice of the laws of another state.

3.  **Foreign Insurance Company—Certificate to do "Business"—
    Statutes.**

    Under Laws 1905, Chap. 73, Sec. 2, prohibiting transaction
    of any business in this state by insurance corporations of cer-
    tain kinds or issuance of certificate of employer's liability in-
    surance until it has deposited a guaranty fund with the State
    Treasurer, as amended by Laws 1907, Chap. 110, Laws 1909,
    Chap. 243, and Laws 1911, Chap. 176, construed as protecting
    the people against the doing of certain kinds of business with-
    out proper safeguards, the word "business" refers only to such
    business as one of the corporations designated in said act could
    conduct, if it complied with the conditions thereof; therefore,
    held, that no matter how broad may be the charter powers of
    a corporation, it may get a certificate to do one certain class
    of business by compliance with the law so far as it aims at
    doing of that particular business.

4.  **"Accident and Casualty Insurance"—"Plate Glass Insurance"—
    Amendment of Statute.**

    "Accident and casualty insurance," under Laws 1911, Chap.
    176, amending Laws 1905, Chap. 73, embraces "plate glass in-
    surance," so that, if there are valid amendments bringing ac-
    cident and casualty insurance companies within this law, a
    plate glass insurer must comply with its provisions in order to
    receive a state insurance commissioner's certificate.

5.  **Constitutional Law—Statute—Presumption of Constitutionality—
    Palpable Conflict.**

    Every legislative act is presumed constitutional and should
    be sustained by courts, unless the conflict between it and the
    Constitution is so palpable as to leave no room for reasonable
    doubt.

6.  **Constitutional Law—Construction—Mandatory Provisions—Scope
    of Title—Judicial Enlargement.**

    Const., Art. 3, Sec. 21, providing that no law shall embrace
    more than one subject, which shall be expressed in its title, is
    mandatory; and when the courts determine that the legislature
    has disregarded this provision, their plain duty is to declare
    the act of no effect. Nor can courts, by construction, enlarge
    the scope of the title.

7.  **Statutes—Titles and Subjects—Constitutional Provisions.**

    Under said Art. 3, Sec. 21, Constitution, Laws 1905, Chap.
    73, entitled "An act concerning the powers of surety, title
    guaranty, employer's liability and burglary insurance and fidel-
    ity corporations, to provide for the examination, management
    and control of the same," by using such definite restrictive
    terms, excluded the right to legislate as to any class of insur-
    ance companies not named therein, including accident and cas-
    ualty companies.

**8. Titles—Constitutional Provisions—Amendment—Matters Germane to Original Act.**

An amendatory act may enlarge scope of the original act, so that the subject-matter of the amendment may materially differ from that of the original act, provided that the subject-matter of the amendment be germane to and be included within the title of the original act; but Laws 1909, Chap. 243, wherein it embraces, in Sec. 1, the subject of "accident and casualty companies," was unconstitutional, since such words could not have been included in the original act under its title, and there was no attempt in the amendatory act to so enlarge upon the title of the original act as to permit of extending thereof to such companies, and such additional subject-matter was not germane to and never became a part of or a valid extension of the original act.

Smith, J., and Polley, J., concurring specially.

(Opinion filed February 10, 1913.)

Appeal from Circuit Court, Hughes County.  Hon. John F. Hughes, Judge.

Application for writ of mandamus on the relation of the Methopolitan Casualty Insurance Company of New York, against O. S. Basford, Commissioner of Insurance of the State of South Dakota.  From a judgment refusing a peremptory writ and dismissing the proceedings, relator appeals.  Reversed and remanded.

*Gaffy, Stephens & Fuller,* for Appellant.

If Chapter 73, Laws of 1905, and its amendments was unconstitutional so far as it attempted to impose restrictions upon the plaintiff company, the record shows that they had complied with all other laws and were entitled to enforce the issuance of a permit to do business in this state as a right.

Paragraph 21 of Article 3, Constitution of the state of South Dakota, reads as follows:

"No law shall embrace more than one subject, which shall be expressed in its title."

It is our contention that the chapters aforesaid embrace a subject not expressed in the title of the original act or any of the amendatory acts.  The original act, Chapter 73, Laws of 1905, had the following title:  "An act entitled: An Act Concerning the Powers of Surety, Title Guarantee, Employers' Liability and Burglary Insurance and Fidelity Corporations, to provide for the Examination, Management and Control of the Same."  There is nothing in the title of Chapter 73, Laws 1905, which could by any in-

ference or stretch of the imagination refer to an insurance corporation engaged in writing insurance against casualty to plate glass or anything else, or writing insurance against personal injury, sickness or disablement or any insurance appertaining thereto; nor is there anything in the body of the act that in any way refers to such class of insurance companies. The act is confined strictly to requirements of surety, title grantee, employers' liability, burglary insurance and fidelity corporations, so that so far as that act is concerned, it did not in its title or in its body attempt to legislate concerning accident or casualty insurance companies.

In 1909 the Legislature passed Chapter 243, Laws of 1909, under the following title: "An Act Entitled: An Act to Amend Chapter 73 of the Session Laws of 1905, as Amended by Chapter 110 of the Session Laws of 1907, Relating to Surety, Title Guarantee, Employers' Liability, Burglary Insurance, Fidelity Corporations, and Relating to Deposit of Securities with the State Treasurer." An examination of this caption under the rules of law made by the courts as evidenced by their decisions would have disclosed that this act was an act to amend Chapter 73, Laws of 1905, and Chapter 110, 1907, which acts purported only to affect surety, title guarantee, employers' liability, burglary insurance and fidelity corporations; so that from that portion of the title stating that it was amendatory to certain acts, no corporation engaged in the business of writing insurance against casualty to plate glass, or any other class of property, could have been apprised that anything in the act of 1909 would affect it; but to make this more specific, they purported in the caption of the act of 1909 to set forth classes of corporations that the act might affect, and they again specified surety, title guarantee, employers' liability, burglary insurance and fidelity corporations. The amendatory act could contain no legislation except that germane to the legislation contained in the original act. Miller v. Herford, 9 N. W. 477; State v. Pierce, 6 N. W. 763; Trumble v. Trumble, 55 N. W. 869; Fish v. Stockdale, 69 N. W. 92; State v. Tibbetts, 71 N. W. 990; People v. Gadway, 28 N. W. 101; State v. Smith, 28 N. W. 241.

But in the case at bar, the Legislature, not content with the use of a caption which did not cover the full subject of the act, attached the misleading statement that it was proposed in the act to legislate only concerning certain classes of corporations, by infer-

ence excluding all other corporations. No person reading this caption could have supposed that the Legislature intended in that act to embrace legislation against any class of corporations other than that named therein, but in the body of the act is found the following:

"Paragraph I. That said Paragraph I. of Chapter 73 of the Session Laws of 1905 be amended so as to read as follows:

"Section 1. Corporations governed by Act. Any corporation now existing or hereafter organized under the laws of this state or any other state or country for the purpose, either wholly or in part, of issuing or becoming surety on bonds and undertakings, employers' liability and burglary insurance, guaranteeing title to real property, accident or casualty insurance, or acting as trustee, shall, before transacting any of said business in this state, make the deposit of guarantee fund, file the statement and procure the certificate of authority to transact said business as hereinafter provided."

The language of section 1 as attempted to be amended is identically the same as the language of that section in Chapter 73, Laws of 1905, with the exception of the fact that the words "accident or casualty insurance" were inserted in the paragraph by the amendatory act. There was certainly nothing in the title of the original act, which is the first provision we find in the laws of this state requiring companies to deposit $50,000.00 with the state treasurer, under which accident or casualty insurance companies could have been included within its provisions. Just as certainly, there is nothing in the title to the act of 1909 under which such companies might be included in its provisions. On the contrary, the act, by its title, misleads by causing the belief that it is confined to surety, title, guarantee, employers' liability, burglary insurance and fidelity corporations alone. This Paragraph I. of Chapter 243 is not even sensible, and it is apparent that the four words quoted above were slipped in the paragraph in some way for the express purpose of evading detection. This becomes even more apparent when section 6 of the same is read, for that section provides:

"Any corporation engaged in transacting any of the business mentioned in section 2 of this Act for profit," etc., "shall upon conviction thereof be fined," etc. The business of accident or casu-

alty insurance is not mentioned in section 2 of any of the acts mentioned in this brief. The only businesses mentioned in section 2 of any of these acts are those mentioned in the caption, to-wit: surety, title guarantee, etc. So that it clearly appears to have been the design of some person or persons to slip something into this act with the least possible chance for detection. There is no repealing clause attached to Chapter 243 of the Laws of 1909, and yet if it be a valid act it must repeal the former laws under which accident and casualty companies were permitted to do business in the state of South Dakota by complying with certain laws.

For the reason that Chapter 243 of the Laws of 1909 attempts to legislate concerning accident and casualty insurance companies while its title fails to contain any indication that such legislation would be included in the act, the same is unconstitutional and void so far as it relates to accident or casualty insurance companies. State v. Becker, 3 S. D. 37; Becker v. White River Valley Railway Company, (S. D.) 132 N. W. 797; Kennedy v. C., M. & St. P. Railway Company, (S. D.) 132 N. W. 802; Fidelity Insurance Company v. Railroad Company, 19 Amer. St. Rep. 858; Eaton v. Walker, 6 L. R. A. 102; 26 Amer. & Eng. Enc. of Law (2d Ed.) page 590; Garragen v. Kennedy, 19 S. D. 11; and the authorities before cited herein.

Chapter 176, Laws of 1911, contains the following caption: "An Act Entitled: An Act Amending Section 2 of Chapter 73 of the Session Laws of 1905 as Amended by Chapter 110 of the Session Laws of 1907 Pertaining to the Capital Stock for Surety of Title, Guarantee, Employers' Liability, Burglary, Fidelity, Accident and Casualty Insurance Companies." It will be seen that this title in no way refers to the amendment of 1909, that being the only act that includes accident and casualty insurance companies in its body; nor does it refer to the provision of that act requiring a deposit with the state treasurer. It refers only to the original act as amended by Chapter 110, Laws of 1907, while in the body of the act it recites "that section 2 of Chapter 73 of the Session Laws of 1905, as amended by Chapter 110 of the Session Laws of 1907, and further amended by Chapter 243 of the Laws of 1909, be and the same is hereby amended to read as follows:" etc. So that, although the title itself holds out to the world that the amendment of 1909 is in no way concerned in the provisions of this act, the

body of the act purports to amend the amendment of 1909. The title to this act of 1911 is the first title which has mentioned accident or casualty insurance companies. And to complete the comedy of errors involved in this attempted legislation, we call the court's attention to the fact that this act only purports to amend section 2 of the Laws of 1909, and that section contains not a single word concerning accident or casualty insurance companies, but is expressly confined to surety, title guarantee, employers' liability, burglary insurance and fidelity corporations. Even if this act had any bearing upon or in any way related to the provision to which objection is made, to-wit, the requirement that $50,000.00 securities be deposited, its title would be insufficient and misleading for the reason that it does not purport to amend the law of 1909, the first law enacted requiring accident or casualty companies to make such a deposit, and it is further misleading in that it contains the recital that the acts which it amends are "pertaining to the capital stock for surety of title, guarantee, employers' liability, etc., corporations."

Respondent claims that if the commissioner of insurance issue a certificate of authority to this company, they will immediately become empowered to write insurance in this state against employer's liability. We are unable to find any reason for the drawing of such a conclusion. State v. Union Central Life Insurance Company, 67 Pac. 647.

"The fact that a foreign corporation has powers under its charter not sanctioned by the laws of another state, will not prevent it from doing other legitimate business authorized by its charter and also by the laws of such other state." State v. New Orleans Warehouse Company, 109 La. 64, 33 South. 81.

That the commissioner would have authority to state in his certificate that branch of business which might be carried on seems to have been considered in the case of State v. Frick, 102 Wis. 107, and in the same case on rehearing, in 78 N. W. 455.

Chapter 73, Laws of 1905, with which it is contended the plaintiff is obliged to comply by reason of the fact that its charter may authorize employers' liability insurance as a branch of accident insurance, so far as the same is applicable to the question under discussion, reads as follows:

"Any corporation now existing or hereafter organized under

the laws of this state, or any other state or country, for the purpose, either wholly or in part, of issuing * * . * employers' liability * * * insurance, shall, before transacting any of said business in this state, make the deposit of guarantee fund, file the statement and procure the certificate of authority to transact said business as hereinafter provided."

The statute therefore does not require that a company organized for the purpose, either wholly or in part, of issuing casualty or employers' liability insurance shall, before transacting any business in this state, make the deposit, but requires that any company, before transacting "said business," to-wit, employers' liability insurance, shall make the deposit. The requirement, therefore, is imposed not as against companies that might be authorized to write this business, but only against companies who sought to write the business in this state. If the plaintiff engaged in employers' liability insurance in this state, it would be obliged to comply with the statute. But even if it were authorized by its charter to write employers' liability insurance among other branches of insurance, if it did not in fact transact "said business" in the state, but transacted other business to which this law did not apply, it would certainly not be required to make any deposit, nor would it be affected by Chapter 73 in any way. We take the broad position that if, upon the request of the plaintiff made to the commissioner for permission to write insurance upon plate glass against breakage alone, the commissioner issued his certificate authorizing the plaintiff to carry on business in this state and the plaintiff came within its borders and wrote employers' liability insurance, the commissioner would be powerless to protect them and the certificate would have no meaning so far as employers' liability insurance was concerned. Nolton, Attorney General, v. Bay State Benefit Association, 50 N. E. 929; Nolton, Attorney General, v. Berkshire Health and Accident Association, 50 N. E. 930.

*L. T. Boucher,* Special Asst. Attorney General, (*Royal C. Johnson,* Attorney General, of Counsel), for Respondent.

The act of 1909, was entirely germane to the act of 1905, as it simply added some additional minor conditions to those required by the act of 1905, and also, added an additional but quite germane branch to a line of insurance already under the management and control of the commissioner under this law among which additional

conditions was a provision in relation to the capital stock of such companies and the condition raising the deposit previously required, and the condition adding accident or casualty insurance generally to the branches previously subjected to this law.   Accident companies, at least employers' liability accident companies, having been included in the first act of 1905 both in the title and text of the law.

It is true that the words accident or surety companies do not appear in the title to the act of 1909, but they need not appear in the title because the act was to amend the law of 1905, which was an act to provide for the examination, management and control of similar companies including employer's liability companies, and relating to deposits of securities with the state treasurer.

The provision in the act of 1909, requiring a certain capital stock is not the subject of the act of 1909.   It is merely an incident, perfectly germane and wise additional condition added to the conditions required by the act of 1905, and subject of which was the management and control of certain corporations including accident insurance corporations, unless it is held that employers' liability insurance corporations are not accident insurance companies, because, as we have said, the act of 1905 included in its title and text "employer's liability insurance corporations," which is a well known line of accident insurance, and which in fact is nothing but accident or casualty insurance.   Sometimes called accident and sometimes called casualty insurance.   Employers' Liability Assurance Co. v. Merrill, 155 Mass. 404; and 50 N. W. 1028 (Minn.).

The act of 1911, is entirely germane to the Act of 1905, and the Act of 1909, and the subject of this law is nothing more or less than the same subject of the law of 1905, to-wit, the examination, management and control of a line of insurance companies named in the act of 1905, amended by the act of 1909.

It is a far cry, a strained construction and unfair interpretation of the law, and of section 21, Article 3, of the Constitution to say that those minor details in the act of 1911, or any one of them, is the subject of the law in the sense that now law shall embrace more than one subject, which shall be expressed in its title.

The plaintiff is an accident and casualty insurance company. Plate glass insurance is casualty insurance and accident insurance. Employer's liability insurance is accident or casualty insurance.

Webster defines a casualty as being an accident chance.

The title to the act of 1905, as well as the acts of 1909 and 1911, names employer's liability insurance.

Clearly employer's liability insurance is accident or casualty insurance.  6 Cyc. 701.

The act of 1911 names accident and casualty insurance companies in its title, and provides that no such corporations, that is, no such corporations as are named in section 1 of the Act of 1909, which names accident or casualty insurance companies, shall do any business in this state until they have made a deposit.

This is a beneficent law, intended for the protection of the people of the state and the courts should not set it aside as unconstitutional except upon clear and unmistakable grounds. Wicken v. City, 23 S. D. 556; Stewart v. Kirby, 12 S. D. 255; Bekker v. White River Co., 132 N. W. 797 (S. D.).

Cyc. defines casualty insurance as follows: "Insurance against loss through accident or casualty resulting in bodily injury or death; but more properly insurance against the effects of accidents resulting in injury to property."  6 Cyc. 701.

It makes no difference that the plaintiff only asks at this time to do a plate glass business.  That is not the test.

Section 1 of the Act of 1905 says that an corporation organized * * * for the purpose of wholly or in part * * * of doing an "employer's liability insurance" * * * shall make the deposit, file the statement, etc.  The plaintiff was by its own showing, organized for the purpose, among others, of doing an "employer's liability insurance," for they say they were organized for the purpose of doing a "general accident business and every insurance appertaining thereto."

However, the act of 1909 is not obnoxious to the Constitution as to its deposit clause, because its title says "Relating to deposit of securities with the state treasurer."  It used the words generally and does not limit the deposit to any particular companies.

The act of 1911 is not obnoxious to the Constitution as to its capital stock clause, because its title contains the words "pertaining to the capital stock for surety * * * employer's liability, * * * accident and casualty insurance companies."

All that the amendatory acts of 1909-1911 needed to say in their titles, was that they were acts to amend certain prior acts naming them.  In other words the act of 1905 was the subject of

the act of 1909—and the act of 1905 and of 1909 was the subject of the act of 1911.  People v. Parvin et al., 14 Pac. 783( Calif.).

The title to amendatory act is sufficient if it gives the chapter or section of the law to be amended; for it is the law to be amended which is the subject of the amending act.

Time and against the courts have said this. See Dogge v. State, 22 N. W. 348; (Neb.); Dunbar v. Frazer, 78 Ala. 538; State v. McCracken, 42 Tex. 384; Wheeler v. State, 23 Ga. 10; Burrows v. Comm., 29 Kans. 197; People v. Parvin, 14 Pac. 783 (Calif.), and the cases there arranged.

Every doubt touching the constitutionality of a law must be, upon grounds of wise public policy, determined in favor of the constitutionality of the law.  This statement has been made by so many courts and text writers that it has become a maxim of the law. Wickhem v. City of Alexander, 23 S. D. 557; State v. Becker, 3 S. D. 29, 51 N. W. 1018; Henrico Co. v. City of Richmond, 106 Va. 282, 55 S. E. 683, 117 Am. St. Rep. 1001: "To doubt must be to affirm."

We think it must be conceded that no court of last resort has ever held that one branch of accident insurance is foreign to any other branch of accident insurance.  Employer's liability insurance being one branch of accident insurance, any and all other branches of accident insurance would not be foreign to it, but on the other hand would be quite logically germane to it.

Therefore, the amending acts of 1909 and 1911 cannot, we submit, be fairly or logically held to be foreign to the act of 1905.

Section 2 of the act of 1905 says no such corporation shall transact "any business" without making the deposit.

Section 2 of the act of 1909 says no such corporation shall transact any business, etc.

Section 2 of the act of 1911 says no such corporation shall transact any business, etc.

The plaintiff must comply with these laws unless they are unconstitutional.

Suppose that for the purpose of interpretation and construction, these several acts be taken as one.

By doing that the text of the different acts would be consolidated and their titles would be consolidated.  So that the substance of the title, without repetition would be as follows:

"An Act concerning the powers of Surety, Title, Guaranty, Employer's Liability, Burglary Insurance, Fidelity Corporations, Accident and Casualty Insurance companies relating to deposit of securities with the state treasurer, Pertaining to the capital stock for Surety of Title, Guaranty, Employer's Liability, Burglary, Fidelity, Accident and Casualty Insurance companies, to Provide for the Examination, Management and Control of the Same."

This is a proper method of treating these laws for the purpose of ascertaining their constitutionality.

It is true the title of the act of 1911 has a technical defect, in that it fails to mention that the act of 1905 which it amends, was also amended in 1909, but under the decisions cited it is substantially sufficient because it refers accurately to the original law which it amends.

To say the least, it was sufficient to put a legislator or the public on notice, and especially as in the first paragraph of the act it corrects the oversight made in the title. Therefore it was fairly an amendment of the law of 1905 as amended up to 1909.

Furthermore, it is clearly germane to the law of 1905 as amended by the act of 1909 for the double reason the act of 1909 was an act relating among other things to "Deposit of securities with the state treasurer," and Section I, of the act of 1909 expressly included accident or casualty insurance companies among those who must make this "Deposit of securities with the state treasurer."

The words "no corporation" in the act of 1911 clearly includes all corporations mentioned in section I, of the Law of 1905 as amended up to the act of 1909.

Any other reading of this law would seem to be far-fetched, would be to go hunting for some excuse to find the act unconstitutional. Freeman's Notes, 86 Am. St. Reports, 270; State v. Olgood, 87 Tenn. 163, 10 S. W. 310.

Details need not be mentioned in the title of a statute: Ex parte Liddell, 93 Cal. 633, 29 Pac. 251; People v. Linda Vista Irr. Dist., 128 Cal. 477, 61 Pac. 86.

Where there is doubt as to whether the subject is clearly expressed in the title, the doubt shall be resolved in favor of the validity of the act. Bobel v. People, 173 Ill. 25, 64 Am. St. Rep. 64, 50 N. E. 322; People v. Superior Court, 100 Cal. 120, 34 Pac.

492; County Commrs of Duval Co. v. Jacksonville, 36 Fla. 196, 18 South, 339; Borough of Milvale v. Evergreen R. R. Co., 131 Pa. St., 1, 18 Atl. 993; Philadelphia v. Ridge Ave. Ry. Co., 142 Pa. 484, 24 Am. St. Rep. 512, 21 Atl. 982; Abeel v. Clark, 84 Cal. 229, 24 Pac. 383; 79 Am. St. Rep. 460 et seq.

Not only may the subject be as comprehensive as the legislative discretion may choose to make it, but the statute relating to it may include every matter germane to, and in furtherance of, the general subject or object expressed in the title: Barksdale v. Laurens, 58 S. C. 413, 36 S. E. 661; Memphis v. American, etc., Co., 102 Tenn. 336, 52 S. W. 172; Prison Assn. v. Ashby, 93 Va. 667, 25 S. E. 893; People v. Kirk, 162 Ill. 138, 53 Am. St. Rep. 277.

If the title of the original act is sufficient to embrace the matter covered by the amendment, it is unnecessary that the title of the amendatory act should of itself be sufficient: Hyman v. State, 87 Tenn. 109, S. W. 372; State v. Algood, 87 Tenn. 163, 10 S. W. 310; Brandon v. State, 16 Ind. 197; People v. Parvin, 74 Cal. 549, 14 Pac. 490. Where one act purports to be an amendment of another, it is not essential that the amendment be cognate to the section amended, if it is cognate to the general subject of the original acts. State v. Madison, 43 Minn. 438, 45 N. W. 856.

Appellant contends that it is not authorized to do employers' accident insurance because of sub-division 3 of section 70 of the Insurance Laws of New York.

The respondent contends that the law of New York is not before the court. No competent proof of the statute law of New York was offered or received as the record shows. Jones on Evidence, Sec. 504.

The appellant has given a somewhat plausible construction to the words "said business" appearing in sections 1 of the act of 1905 and the act of 1909; but its construction of those words leaves out of consideration the language of sections 2 of the acts of 1905, 1909 and 1911, which expressly provide that "no such corporation shall transact any business in this state * * * until it shall have deposited with the state treasurer a guaranty fund," etc.

WHITING, J. The relator is an insurance company organized under the laws of the state of New York, and, under such laws, authorized to write insurance "upon plate glass against breakage,

and against injury, disablement or death resulting from traveling or general accident, and against disablement. resulting from sickness, and every other insurance appertaining thereto." It is not authorized by its charter to transact any other business than as above stated. Under the laws of the state of New York the business of employer's liability insurance is recognized and treated as separate and distinct from general accident and casualty insurance, and separate authorization in a company's charter is required for each, but in the charter granted to relator there was nothing calling attention to this classification made by the New York statutes, and nothing in such charter specifically forbids relator from engaging in employer's liability insurance business. Relator, having been engaged in the business of insuring plate glass against breakage within the state for several years, did at the beginning of the year 1912 apply to the respondent, the insurance commissioner of this state, for a certificate authorizing it to continue in said business in this state. It made no application for authority to engage in any other business named in its charter. The certificate asked for was refused, and relator brought a special proceeding in the circuit court asking for a writ of mandamus requiring the respondent, as commissioner of insurance of this state, to issue it such certificate. An alternative writ with order to show cause was issued by such court, and, upon the hearing thereon, the court, after considering the affidavits submitted, refused the peremptory writ, and dismissed the proceeding. It is from the judgment refusing such writ and dismissing such proceeding that this appeal is taken.

It is conceded by respondent that appellant is entitled to the certificate prayed for, and that a writ compelling respondent to grant such certificate should issue, unless appellant has failed to comply with the provisions of chapter 73, Laws of 1905, and acts amendatory thereof. It is claimed by respondent that appellant comes under the provisions of such act and its amendments, and that it has not complied therewith; while it is contended by appellant that those provisions of said act and amendments, which may appear to apply to appellant, are unconstitutional and therefore void. To get a clear understanding of the precise questions presented to us, it is necessary to call attention to the titles and some of the provisions of the act in question and its amendments.

The title of the original act, to-wit, (chapter 73, Laws 1905),

is as follows:   "An act entitled an act concerning the powers of surety, title guaranty, employer's liability and burglarly insurance and fidelity corporations, to provide for the examination, management and control of the same."   Section 1 of said act reads as follows:   "Section 1. [Corporations governed by act.] Any corporation now existing or hereafter organized under the laws of this state or any other state or country, for the purposes, either wholly or in part, of issuing or becoming surety on bonds and undertakings, employer's liability and burglary insurance, guaranteeing title to real property or acting as trustee, shall, before transacting any of said business in this state, make the deposit of guarantee fund, file the statement and procure the certificate of authority to transact said business as hereinafter provided."   Section 2, so far as the same is material to the matters before us, provides:   "No such corporation shall transact any business in this state, nor issue any bond, undertaking, certificate of employer's liability or burglary insurance, certificate of title,   *   *   * until it shall have deposited with the state treasurer a guarantee fund.   *   *   *"   By chapter 110, Session Laws of 1907, section 2 of the act of 1905 was amended, but the amendment is immaterial so far as the questions before us are concerned.

Chapter 243, Session Laws of 1909, is entitled as follows: "An act entitled an act to amend chapter 73 of the Session Laws of 1905 as amended by chapter 110 of the Session Laws of 1907, relating to surety, title guaranty, employer's liability, burglary insurance, fidelity corporations and relating to deposit of securities with the state treasurer."   This law purported to amend both sections 1 and 2, section 1 being amended by inserting therein after the words, "guaranteeing title to real property," the words, "accident or casualty insurance."   So far as material to the question now before us, section 2 remained identical in wording with the quotation from the original section 2 above, excepting that it had a provision requiring the corporation to have a paid-up capital of at least a certain amount, but no reference was made in said section 2 to "accident or casualty insurance."

Chapter 176, Laws of 1911, is entitled:   "An act entitled an act amending section 2 of chapter 73 of the Session Laws of 1905 as amended by chapter 110 of the Session Laws of 1907 pertaining to the capital stock for surety of title, guaranty, employer's lia-

bility, burglary, fidelity, accident and casualty insurance companies." The only change in that part of section 2 hereinbefore referred to was a change in the amount of capital stock required and the amount of guarantee fund to be deposited with the treasurer; there still being in section 2 no reference whatever to "accident and casualty insurance."

Respondent contends that, inasmuch as under its charter the appellant was empowered to engage in the business of accident and casualty insurance, it was not entitled, even under the law of 1905, supra, to do business in this state until it had deposited the guarantee fund required by such law, because appellant, being *authorized* to do an *accident and casualty* insurance business, had *authority* to *engage* in *employer's liability insurance;* respondent contending that any corporation having authority to engage in such insurance must comply with the provisions of section 2 of that act, regardless of whether it is seeking to do that particular kind of an insurance business within this state.

[1] Appellant insists that, inasmuch as it was not asking to conduct any class of insurance business named in the 1905 statute, it was entitled to a certificate without making the deposit of the guarantee fund, even though it was authorized by its charter to engage in employer's liability insurance. Appellant further contends that the term "employer's liability insurance" is not included within the comprehensive term "accident and casualty insurance" under the laws of the state granting to it its charter, and that it would not be included within such term, even though the statute of New York did not specifically distinguish between the two terms. With this last contention of relator we cannot agree. Though the statute of New York may make a clear distinction between accident and casualty insurance on the one hand and employer's liability insurance upon the other, and even though chapter 176 of the Laws of 1911, supra, by its title seems to recognize such a distinction, yet as a matter of fact and law employer's liability insurance is but a branch of accident and casualty insurance; and when appellant, by its charter, is authorized to do an accident and casualty insurance business, and there are no restrictive words in its charter showin that, regardless of the use of such general terms, the business of employer's liability insurance is not included, respondent would be justified in assuming that appellant, holding such charter, was author-

ized to engage in the business of employer's liability insurance. Employer's Liability Assurance Co. v. Merrill, 155 Mass. 404, 29 N. E. 529.

[2]   Certainly neither respondent nor the people of this state will take notice of the laws of the state of New York.

[3]   It will be noticed that in section 2 of the act under con-. sideration, and in all the amendments thereof, it is provided that "no such corporation shall transact any business in this state * * * *" until it has complied with such act; while in section 1 it is provided that the corporation, "before transacting any of said business in this state," shall do the things required by section 2. Respondent, relying upon the wording of section 2, insists that while a foreign corporation, which, by its charter, could only engage in the business of insuring plate glass against breakage, would be entitled to a certificate without complying with the provisions of the law of 1905, yet, inasmuch as relator is empowered to do a class of insurance business included within this law, to-wit, employer's liability insurance, it cannot get such certificate without  complying with the provisions of section 2.   We think this is placing an unreasonable construction upon this law. Respondent concedes that he has a right to grant a certificate to a corporation authorizing it to do only one of two or more classes of business authorized by its charter.   It seems to us that a fair interpretation of this law, construing the several parts thereof together, and considering the thing aimed at by the law—which was not so much the protecting of the people against the corporations as it was to protect them against the doing of certain kinds of business without proper safeguards—would require the word "business" in said section 2 to be held to refer to and include only business such as one of the corporations designated in this act would be empowered to conduct if it complied with the conditions of this act; and that, therefore, no matter how broad may be the charter powers of a corporation, it may still get a certificate to do one certain class of business under this law, provided it complies with the provisions of such law so far as the same are aimed at the doing of that particular class of business.   One can readily see that if the charter powers of a foreign insurance company were very broad, and we had in this state statutes like chapter 73, laws of 1905, supra, each one relating only to one certain class of insurance and imposing restrictions upon the

doing of that particular class of insurance, which conditions differed as between the several classes of insurance that such company was authorized to engage in, and if such company, when it came into this state, sought permission to engage in only one of the many different branches of insurance which it was authorized to conduct, yet, under the construction placed upon this statute by the respondent, such a company would have to comply with the provisions of perhaps a dozen different laws in no manner pertaining to the particular class of business it desired to conduct in this state. Certainly if the people of this state do not think it necessary to safeguard plate glass insurance, or if there be another statute relating thereto, it would be unreasonable to require a company seeking to engage in that business, and that business only, to comply with a law having no bearing upon that particular business.

[4]   What we have already said would dispose of this case if it were not for the amendments to chapter 73, laws 1905, by which it was attempted to amend such law so that it would include within its terms and provisions accident and casualty insurance companies. Of course, it must be conceded that insurance against breakage of plate glass comes directly within the term "accident and casualty insurance," so that, if there has been a valid amendment bringing companies doing accident and casualty insurance within the terms of this law, the appellant must comply with the provisions of such law before it is entitled to receive a certificat. from respondent. Appellant contends that the amendments to this law, so far as such amendments attempted to extend the provisions of the law to accident and casualty insurance companies, are unconstitutional as being in contravention of section 21, art. 3, of the Constitution of this state, providing that "no law shall embrace more than one subject, which shall be expressed in its title."

[5, 6]   We fully appreciate the importance and delicacy of the question presented. No rule is better settled than that every act of the Legislature is presumed to be constitutional, and that the courts should sustain the constitutionality of a law unless the conflict between the statute and the Constitution is so palpable as to leave no room for reasonable doubt as to its unconstitutionality. Wickhem v. Alexandria, 23 S. D. 556, 122 N. W. 597; Bekker v. Railway, 28 S. D. 84, 132 N. W. 797. Yet ours is a constitutional government, the people, in their sovereign capacity, have placed the above re-

striction upon the methods of legislation, have prescribed the above rule which their legislative servants must conform to, and, if they neglect to conform to this rule and keep within this restriction, their labor; no matter how meritorious otherwise, will be of no effect, as this section of the Constitution is mandatory.  State v. Tibbets, 52 Neb. 228, 71 N. W. 990, 66 Am. St. Rep. 492.  To the courts is left the duty of determining when the Legislature has disregarded such rule and restriction; and, when it is found that either of these provisions of the supreme law of the state has been disregarded, the further duty of the courts is clear, let the consequences be what they may.  As was well said by the Supreme Court of Virginia in Fidelity Insurance, Trust & Safe Deposit Co. v. Shenandoah Valley R. Co., 86 Va. 1, 9 S. E. 759, 19 Am. St. Rep. 858: "As to the constitutional provision in question, it is * * * * not only mandatory, but of great public utility.  It was introduced into the Constitution for a wise purpose, and ought to be reasonably interpreted and firmly enforced.  One of its objects is to prevent corrupt or surreptitious legislation by incorporating into a bill obnoxious provisions of which the title gives no indication, and its requirement is that the title, while it need not be a complete index of the act, must indicate its object with sufficient distinctness to enable the members of the Legislature to fairly understand it by simply hearing the title read.  In other words, the title is not to be used as a deceptive cover for vicious or surreptitious legislation. When the title is general, as it may be, all persons interested are put upon inquiry as to anything in the body of the act which is germane to the subject expressed; but when the title is restrictive, and confined to a special feature of a particular subject, the natural inference is that other features of the same general subject are excluded.  'As the Legislature,' says Judge Cooley, 'may make the title to an act as restrictive as they please, it is obvious that they may sometimes so frame it as to preclude many matters being included in the act which might with entire propriety have been embraced in one enactment with the matters indicated by the title, but which must now be excluded because the title has been made unnecessarily restrictive.'  Nor can the courts, he adds, 'enlarge the scope of the title.  They are vested with no dispensing power.  The Constitution has made the title the conclusive index to the legislative intent as to what shall have operation.  It is no answer to say that

the title might have been made more comprehensive, if in fact the Legislature have not seen fit to make it so.' Cooley's Constitutional Limitations, 149." As was said by Justice Brewer in the case of State v. Bankers' & Merchants' Mut. Ben. Ass'n., 23 Kan. 499; "The Constitution has said that the title must be an index to the law, and the courts may not sanction as a valid enactment any part of a statute to which the finger of the title does not point. If we should attempt to enlarge the title, we should defeat the very purpose of the constitutional prohibition, which was to make the title to a bill notice of all contemplated legislation." In Memphis St. Ry. Co. v. Byrne, 119 Tenn. 278; 104 S. W. 460, the court said: " 'If the title adopted be narrow and restricted, carving out for treatment only a part of a general subject, the legislation under it must be confined within the same limits (State v. Bradt, 103 Tenn. 584, 53 S. W. 942; Hyman v. State, 87 Tenn. 109, 113, 9 S. W. 372, 1 L. R. A. 497; Cooley, Const. Lim. (5th Ed.) 179); and, if it be broad and general, the legislation under it may have a like scope.' " In the case of In re Breene, 14 Colo. 401, 24 Pac. 3, the court said: "The General Assembly may within reason make the title of a bill as comprehensive as it chooses; but, when it elects to limit the title to a particular subdivision of some general subject, the right to embody in the bill matters pertaining to other subdivisions of such subject is relinquished." See, also, State v. Tibbets, 52 Neb. 228, 71 N. W. 990, 66 Am. St. Rep. 492; State v. Barrett, 27 Kan. 213. To illustrate what we have said above: Under a title declaring the purpose of a bill to be to regulate the running at large of "cattle," there could be legislation as to all kinds thereof, including horses, mules, hogs, sheep, etc., but, if the Legislature saw fit to use in the title of the act the more restrictive term "horses," there could be under such title no legislation pertaining to any other class of "cattle," and, if the Legislature saw fit to use in the title of the act the yet more restrictive term "white horses," there could be under it no legislation relating to horses of any other color.

[7] We find that in chapter 73, laws 1905, the Legislature, instead of using in the title thereof a comprehensive term such as would include all kinds of companies doing a surety or insurance business, used definite restrictive terms which absolutely excluded

the right, under such title, of legislating in relation to any class of insurance companies not named therein.

From what we have said above it becomes clear that under the title of the act of 1905 the Legislature of that year could not have included in the body of that act, and thus brought within its provisions, accident and casualty insurance companies. Can a Legislature do indirectly, through amendments, what it could not have done directly?

[8]  There can be no question but that a Legislature may, by amendment, enlarge the scope of the original act so that the subject matter found in the body of the amendment may materially differ from that of the original act, providing, however, that the subject-matter of the amendment be germane to the subject matter of the original act and be included within the title of the original act. This is but another way of saying that, by amendment, anything may be brought into the amended act that might have been originally enacted under the title of the original act. Board of Sup'rs of Chippewa County v. Auditor General, 65 Mich. 408, 32 N. W. 651; Fidelity Insurance, Trust & Safe Deposit Co. v. Shenandoah Valley R. R. Co., supra; Roby v. Sheppard, 42 W. Va. 286, 26 S. E. 278. There is some conflict in the authorities upon the point as to whether a Legislature can by amendment, bring into an act all that might have originally been enacted under the title thereof. In Erickson v. Cass County, 11 N. D. 494, 92 N. W. 841, the court said: "Appellants' counsel contends, in substance, that section 61 of the state Constitution, before quoted, prohibits an amendment to a section of a statute when the subject-matter of the amendment differs from the subject-matter contained in the section amended, even though the amendment relates to the same subject of legislation, and is within the title of the act amended. The cases are in confusion upon this point, and the conflict does not entirely arise because of differences in the constitutional provisions upon which they are based. The position of appellants' counsel has the support of a number of cases. We are of the opinion, however, that the better reason and the best-considered cases, including those under constitutions like our own, are against this view, and are to the effect that a section of a statute may be amended so as to include provisions which are not directly related to those embraced in the original section, provided the new provisions are germane to the

subject of the act amended as expressed in its title." The Supreme
Court of Minnesota holds in favor of the limitation upon the rule
announced in the North Dakota decision. In the case of State ex
rel. Rice v. Smith, 35 Minn. 257, 28 N. W. 241, speaking of the
rule upheld in the above decision, being the rule contended for by
the respondent in that case, that court says: "It may be thus ex-
pressed: In an amendatory act, entitled as such, the title being not
restrictive in its terms, may be embraced any legislation which
might have been enacted in the original law under its title." But
in laying down the rule which they maintain should prevail that
court in the same case says: "An amendatory law is for the amend-
ment, not of what might have been enacted under the title of the
original statute, but of what was enacted; not of what the original
law might have been, but of what it was. * * * Yet, the prin-
ciple relied upon by the respondent would sustain such legislation,
because it might have been adopted under the title of the original
law. The fault in the asserted rule is that it does not regard the
nature and extent of the original enactment, which it is the declared
purpose of the later act to amend, but only the title of it. It rests
upon the assumption that the enactment was as comprehensive as
under its title it might have been. We think it cannot be relied up-
on to aid in the determination of such cases, and, if recognized as
a rule without qualification, that it would open a way to the accom-
plishment of the very evils which the constitutional provision was
intended to prevent."

As supporting the rule that in any case the subject-matter of
the amendment must be within the title, be such title ever so re-
strictive, we cite, besides the cases last cited, Eaton v. Walker, 76
Mich. 579, 43 N. W. 638, 6 L. R. A. 102, and also Memphis St. Ry.
Co. v. Byrne, supra, where the court, after noting the rules appli-
cable to the case of the original act, says: "These rules apply to
amendatory statutes. Such a statute incorporates itself with the
original law, and the two become one act, as fully and completely
as if enacted at one time in one bill, and the matter of the
amendment must not only be germane to the body of the original
act, in order to avoid violating the one-subject mandate of the
Constitution, but, *in the absence of an enlargement of the title of
the latter act,* it must come within the title of the original statute
and be germane to the subject there expressed, in order to comply

with the other mandate that the subject be expressed in the title. If it be otherwise in either particular, it is void. Hyman v. State, supra; Goodbar v. Memphis, 113 Tenn. 23, 81 S. W. 1061." The underscoring in the above quotation is ours. In Fidelity Insurance, Trust & Safe Deposit Co. v. Shenandoah Valley R. Co., supra, the court held that by an amendment to an act entitled an act to secure the payment of the "wages and salaries" of certain employes of railway, canal, steamboat, and other transportation companies, the act could not be extended so as to have it apply to payment for "engines" and "cars" supplied. In the case of Eaton v. Walker, supra, the defendant, a mercantile corporation, claimed to have been incorporated under an act, entitled "An act for the incorporation of manufacturing companies" (Acts 1875, No. 187), the Legislature, in 1881 (Acts 1881, No. 274), amended this act, the title of the amended act being "An act to amend section one of an act entitled 'An act for the incorporation of manufacturing companies,' approved May 1, 1875, so as to include mercantile business," and the body of the amended section was changed so as to read, "for the purpose of engaging in and carrying on any kind of manufacturing or mercantile business, or any union of the two." Here we find, not only an amendment of the law, but an enlargement of the title, which enlargement of the title, if effective to allow legislation of wider scope than that under the original title, made the title comprehensive enough so that it embraced the subject-matter of the amended section. The court said: "The title of the act of 1875 remains unchanged, and only provides for the incorporation of manufacturing companies. The act of 1881 provides for the incorporation of companies to carry on a mercantile business—a business entirely foreign to the act of 1875, which it purports to amend—and therefore introducing matters not embraced in the purposes indicated in the title to the act amended. Section 20, art. 4, of the Constitution, provides that 'no law shall embrace more than one object, which shall be expressed in its title.' This attempt to incorporate a new business into the act of 1875 by the amendment of 1881 falls plainly within the prohibition of this section of article 4 of the Constitution. The amendment is, in effect, an independent statute, and provides for the incorporation of companies that are not mentioned or provided for by the act of 1875." The original act considered in Fish v. Stockdale, 111 Mich. 46, 69 N. W. 92, was entitled: "An

act to regulate the taking and catching of fish in the inland lakes of this state." The title of the amendment was "An act to amend section one of act * * * entitled: 'An act to regulate the taking and catching of fish in the inland waters of this state.'" The court said: "The title was defective, in that it did not express the object of the bill. Section 20, art. 4, Const. The title gave no notice to the legislators or to the people that the bill provided that the provisions of the original act should be extended to other subjects." So the title of the 1909 amendment gave no notice whatever that the amendment was designed to extend the provisions of the 1905 law to companies not already included in such law. In the state of Alabama they have a statute providing for the trial of misdemeanors. This statute was afterwards amended, the title to the amendment reading that it is an act "to amend an act for the trial of misdemeanors. * * *" One section of the amended act purported to extend the provisions of the act to the trial of "felonies." It will be readily seen that if the title to the original act had used the comprehensive term "crimes" instead of the restrictive term "misdemeanors," and the body of the original act had only related to "misdemeanors," the amendment would have been within the original title. The Supreme Court of Alabama, speaking of this act and its amendment, say, in Harper v. State, 169 Ala. 28, 19 South. 857: "It is clear, therefore, that the amendatory act, in so far as it relates to misdemeanors and their trial in said court, is, as to this class of crimes, purely amendatory and within its title. But it needs only a suggestion to make it equally clear that felonies and their trial were not comprehended within the title of said act, and, in so far as there was an attempt to include them in the act, under such a caption, it was futile and void." It thus becomes absolutely clear that the insertion of the words "accident and casualty companies" in section 1 of the act of 1909 was unconstitutional, for the reason that such words could not have been included in section 1 of the original act under its title, and there has been no attempt in the title of the 1909 amendment to so enlarge upon the title of the original act as to permit of extending the provisions of this law to such companies. As the amendment of 1911 does not purport to amend section 1 of the original act, the words "accident and casualty companies" have never become a part of said section 1; nor is there any reference to such companies in section 2 even as amended by

the act of 1911. It follows that the provisions of the 1905 act have never been extended to accident and casualty companies and therefore do not apply to a company engaged only in the business of insuring plate glass against breakage.

There are authorities seeming to hold, as is implied by the words underscored in the above quotation from the opinion in Memphis St. Ry. Co. v. Byrne, that the title of an amendatory act may so enlarge upon the title of the act to be amended that, under such title of the amendatory act, there may be legislation broader and more comprehensive in its scope than would have been permissible under the title of the original act, providing only that the subject-matter of the legislation contained in the amendment must be germane to that of the act amended. Upon the other hand, there are authorities seeming to hold that in an amendment, no matter how enlarged may be its title, there can be included no subject-matter, except such as is both germane to the subject-matter of the original act and within the title of such act. Eaton v. Walker, supra, as well as the comments thereon in the latter case of Jenking v. Secretary of State, 79 Mich. 305, 44 N. W. 787. It is unnecessary at this time for us to pass upon this disputed question, and nothing that we have said herein should be taken as indicating our views thereon. The Legislature of 1905 could, if it had so desired, have used a title for chapter 73 comprehensive enough to have permitted of an enactment thereunder as broad as that sought by the several amendments, but it did not elect so to do. The object sought through the purported amendment is undoubtedly meritorious, and can readily be secured through the enactment of a new act including within its terms all the companies sought to be reached, or by the passage of an act, under an appropriate title, providing that the law of 1905 and its several amendments shall apply to "accident and casualty companies." The Legislature has used an unconstitutional method in trying to secure a constitutional object. We have discussed at considerable length the propositions bearing upon the issues herein, as they are of great importance; and we trust that what we have said may not only be a guide to our courts, but may aid the legislative branch in its efforts to enact valid laws.

The judgment appealed from is reversed, and the special proceeding remanded for further action in conformity with this decision.

SMITH, J. I concur in the view expressed by Mr. Justice WHITING, that the provisions of the act of 1905 have never legally been extended to cover any other or additional branch of accident or casualty insurance not mentioned therein, and that the judgment should be reversed. But I do not wish to be understood as concurring in any statement which might seem to imply that the title of an amendatory act in any way affects the title of the original act. To speak of amending the title of the original act appears to me likely to lead to confusion of thought, and possibly to wrong conclusions.

Briefly stated, if the title of the original act is good as to that act, that title has performed its constitutional function. The only questions which can then arise are as to the amendatory act, whether it has a good title, and whether it embraces a subject germane to the subject contained in the original act. The subject of the amendatory act must be expressed in its title. The subject of an amendatory act is the particular thing which is to be added to, or taken from, the original act. If the title to the amendatory act complies with this requirement, the constitutional provision as to title would seem to be fully satisfied. The constitutional rule applies to the title, and the subject, of an amendatory act to the same extent, and with like effect, as to an original act. It seems to me that some confusion and perhaps some slight conflict appearing in the decisions might be obviated by keeping in mind the fundamental object of the constitutional provision, namely, that one subject only shall be contained in an act, whether original or amendatory, and that subject must be expressed in the title. It would seem plain that the title of the amendatory act must refer in some way to the original act for the purpose of identification—not because the Constitution requires any such reference. The act proposed to be amended being sufficiently identified in the title of the amendatory act, the only things necessary are that the subject of the proposed amendment be expressed in the title of the amendatory act, and that such subject be germane to the subject contained in the original act.

A full discussion of the question and an examination and comparison of the decisions construing similar constitutional provisions is not necessary for the purposes in view at this time.

POLLEY, J. I concur in the above.