TOOHEY, Respondent, v. BURNSIDE, Mayor, et al (MON-
SERUD et al Intervener), Appellants.

(168 N. W. 742).

(File No. 4372.    Opinion filed Sept. 3, 1918).

1.  **Appeals—Respondent's Death After Briefs Filed—Enjoining City Election—Appellate Jurisdiction re Merits—Public Rights, Welfare as Affecting.**

Where, after briefs on both sides were filed, upon appeal to Supreme Court from an order temporarily enjoining defendants mayor and city commissioners, from calling an election for selection of a new board of commissioners under Laws 1917 Ch. 303 (known as the City Manager Law), plaintiff and respondent died; certain existing commissioners being parties defendant as interveners, and being sole appellants; **held,** that the contention by counsel who prepared respondent's brief, and who, disclaiming the right to further represent respondent on the appeal, and who act solely as amici curiae, that without substitution of party respondent Supreme Court is without jurisdiction to entertain and determine the appeal upon its merits, is untenable; that the cause of action merged in the order appealed from; that, the cause having been submitted upon briefs prior to respondent's death, the Court has jurisdiction to determine the validity of the order; especially in view of the nature of the action, involving, as it does, publish rights and interests affecting public welfare.

2.  **Statutes — Constitutionality — Title — City Manager Law—More Commissioners, Whether Substitutionary for Old—Former Decision Approved.**

Laws 1917, Ch. 303 (known as the City Manager Law), wherein its title declares it to be an act authorizing employment of city managers by city commissioners and cities governed by a mayor and board of aldermen, and increasing the number of commissioners and powers of cities employing city managers, is unconstitutional, wherein it provides for election

of such commissioners, and that upon their qualification, etc., the term of office of their predecessors in office shall cease; there being nothing in the title indicating or advising legislators or the public that the law intends to and provides for superseding of existing commissioners by a new body; the title being clearly misleading in that it leads to belief that the law in this respect merely provides for an addition to and increase of the existing board of commissioners.

3. **Courts—Unconstitutional Law, Re Title—Reasonable Doubt Re— Adjudicating Validity—Rule.**

When a Legislature adopts a specific title for an act, it must see to it that such title is not misleading. Mindful of the rule, that, in order to warrant holding legislation unconstitutional, courts should be satisfied of unconstitutionality beyond reasonable doubt, yet the rule announced in Insurance Co. v. Basford, 31 S. D. 149, that the people, in their soverign capacity, having placed the constitutional restriction (Const. Art. 3 Sec. 21) upon methods of legislating, the Legislature must conform thereto, else their action will be without effect, and that courts' duty is to determine when such rule has been disregarded, and when so found, to so adjudicate—is hereby approved.

Gates, J., taking no part in the decision.

Appeal from Circuit Court, Minnehaha County. Hon. Joseph W. Jones, Judge.

Action by John H. Toohey, against George W. Burnside, mayor, and others as city commissioners, in which M. O. Monserud and others intervened, to enjoin the calling of a city election for election of city commissioners. From an order temporarily restraining defendants, the interveners appeal. Affirmed.

*Caldwell & Caldwell,* and *Wagner & Danforth,* for Appellants. *Bailey & Voorhees,* and *Aikens & Judge,* for Respondent.

(1) To point one of the opinion, Appellants cited:

Carr vs. Risher, (N. Y.) 25 N. E. 296; Kelley vs. Kelley, (Ind.) 37 N. E. 545; Phelan vs. Tyler, (Cal.) 28 Pac. 114; Goldsborough vs. Hewitt, (Okla.) 110 Pac. 906; Bell vs. Bell, 181 U. S. 179; 45 L. Ed. 804; Danforth vs. Danforth, 111 Ill. 236.

Respondent cited:

Chicago, Milwaukee & St. Paul Railway Company vs. Commissioners of the City of Sioux Falls, 28 S. D. 471.

Counsel as Amici curiae cited:

Code Civ. Proc. Secs. 91, 92, 93; Jarvis vs. Felch, (N. Y.) 14

Abbotts' Pr. 46.; Reed vs. Butler, (N. Y.) 11 Abbotts' Pr. 128; Ridgeway vs. Bulkley, 7 How. Pr. 269.

(2) To point two, Appellants cited: ·

State ex rel, vs. Bentley, (Kas.) 164 Pac. 290; State vs. Thompson, (Ala.) 69 So. 461.

WHITING, P. J. Acting under the provisions of chapter 303, Laws of 1917 (known as the City Manager Law), the city of Sioux Falls held an election for the purpose of determining whether such city should adopt the provisions of said law. Said law requires, in case a city elects by the vote of its people to come under its provisions, that, within a time therein named, another election shall be held to select a new board of commissioners to take the place of the existing board of commissioners in commission governed cities such as Sioux Falls. Understanding that a majority of the electors had voted in favor of adopting the provisions of said law, plaintiff, prior to the canvass of said votes, brought this action seeking to enjoin defendants, as commissioners of said city, from canvassing the vote cast at said election and declaring the result thereof, and from calling the election for the purpose of choosing a new board of commissioners. The grounds upon which plaintiff based his right to relief was the alleged unconstitutionality of the law in question. Defendants answered alleging the constitutionality of the law, the fact that the electors had voted in favor of adopting the provisions thereof, and their duty to canvass the votes and call the second election. The interveners, electors and taxpayers of said city, sought and were allowed to intervene; they alleging as grounds therefor that defendants were in truth and fact in sympathy with plaintiff's action in instituting this suit and desirous of his success for the reason that, if the provisions of said law were adopted by said city and a new board of commissioners elected, the result would be to terminate the terms of office of said defendants. The trial court granted a temporary injunction restraining defendants from proceeding to call said second election. From such order of the trial court interveners and they alone appealed. After the taking of such appeal and after the parties thereto had filed in this court their printed briefs and there remained nothing further to be done before the final disposition of such appeal except the presentation of oral arguments,

respondent, on the ninth day of July, 1918, died. Appellants, upon notice served upon counsel for respondent, moved this court to proceed to consider and decide the appeal regardless of the fact of the death of respondent and of the further fact that there had been no substitution of party respondent. The counsel who had represented respondent took the position that they had no authority to appear in court after the death of respondent, and for that reason, they declined to present an oral argument upon appeal. This court, having requested the respective counsel to present briefs upon the question of the jurisdiction of this court to determine the appeal upon its merits without a substitution of party respondent; briefs were presented upon such question by such attorneys, the former attorneys for respondent appearing as amici curiae.

[1] Thus the first matter for our consideration and determination is this question of the jurisdiction of this court to dispose of and propriety of this court in disposing of the appeal before any substitution of party respondent shall have been made. It is clear that statutes relating to abatement of causes of action have no application to the facts presented here. The cause of action has merged in the order of the trial court. That being the situation and this cause having been submitted to this court upon written briefs prior to death of respondent, there not only rests in this court full and complete jurisdiction to determine the validity of such order (1 Corpus Juris, 169, and cases cited), but, in view of the nature of this action—the public rights involved therein, and the relief granted by the trial court—we deem it highly proper and in the interests of the public welfare that we proceed to determine the merits of this appeal.

[2] Respondent questions the constitutionality of the law in question upon several different grounds. We find it unnecessary to consider but one of the grounds urged. Article 3, § 21 of our Constitution provides: "No law shall embrace more than one subject, which shall be expressed in its title." The title of the law before us is as follows:

"An act entitled, an act to authorize the employment of city managers by cities under commission and cities governed by a mayor and board of aldermen, and prescribing the procedure therefor and increasing the number of commissioners and powers of cities employing city managers."

The law provides for the election, at this second election—the
one enjoined by the order appealed from—of nine commissioners,
and further provides that said body of nine commissioners should
qualify and enter upon their duties, and that upon such qualifica-
tion by the new board, *the term of office of their predecessors shall
cease.* It is contended by respondent, and we think rightfully, that
there is nothing in the title to indicate or advise the legislators or
the public that the law intends to and does provide for the super-
seding of the existing commissioners by a new body; but that the
title is clearly misleading, in that it would lead one to believe that
the law provides for an addition to and increase of such board of
commissioners as might be existing at the time that any city elects
to adopt this plan of government.    There can be no question but
that the Legislature had the power, in an act having a proper title,
to enact the provisions we are now considering.    Under a general
title, such as was before the court in State v. Bentley, 100 Kan.
399, 164 Pac. 290, cited by appellants, this might have been done.
The title of the law before the court in that case was:

"An act relating to the government of all cities of Kansas, and
to establish an optional form of government."

[3] But when a Legislature adopts a specific title for an act,
it must see to it that such title is not misleading.    We are not un-
mindful of the rule so often declared by this court that, in order to
warrant a holding that legislation is unconstitutional, a court should
be satisfied of its unconstitutionality beyond a reasonable doubt;
but we are mindful of what we announced in Insurance Co. v.
Basford, 31 S. D. 149, 139 N. W. 795, and reiterated in State v.
Young, 37 S. D. 196, 157 N. W. 325, when speaking of this same
section of our Constitution as we are now considering:

"Ours is a constitutional government, the people, in their
sovereign capacity, have placed the above restriction upon the
methods of legislation, have prescribed the above rule which their
legislative servants must conform to, and, if they neglect to con-
form to this rule and keep within this restriction, their labor, no
matter how meritorious otherwise, will be of no effect, as this sec-
tion of the Constitution is mandatory. * * * To the courts is left
the duty of determining when the Legislature has disregarded such
rule and restriction; and, when it is found that either of these pro-
visions of the supreme law of the state has been disregarded, the

further duty of the courts is clear, let the consequences be what they may."

The title to the law before us is clearly misleading, and much that was said by us in State v. Young, supra, is peculiarly applicable thereto. As said by this court in State v. Becker, 3 S. D. 29, 51 N. W. 1018, and reiterated in State v. Young, supra, the above provision of our Constitution was "intended to prevent the insertion into bills of matter or measures of which the title gave no notice or intimation, and thus to deceive or mislead the individual legislators and the public generally."

A reference to the title of this act shows that the act was to provide, not only for "increasing * * * power of cities employing city managers." Would any one for a moment contend that, under such a title, it would have been proper for the Legislature to have prescribed the powers of such a city adopting the provisions of such act, and to have provided that such powers should take the place of and supersede the powers theretofore possessed by such city? Certainly not. The title was a clear notice that the powers provided for by the act were in addition to the powers already possessed by such city. As a fair illustration of the question before us, we would call attention to article 5, § 6, of our Constitution, which reads as follows:

"The number of said [Supreme Court] judges * * * may after five years from the admission of this state under this Constitution, be increased by law to not exceeding five."

Would any one contend that, under this constitutional provision—because of the use of the word "increased" therein—the Legislature not only was empowered to provide by law for a bench of five judges, but that it had authority to provide for the appointment or election of a bench of five judges, and that, upon their qualifying, the terms of the three judges then in office should terminate? Certainly the power to *increase* the *number* of judges did not include the power to provide for an entirely new body of judges to supersede the existing body. It follows that the notice, given by the title of this act, that one of the subjects covered by such act was the increasing of the number of commissioners, did not advise the Legislature or the public that, in the body of such act, there might be found a provision under which a new board of nine commissioners was to be chosen who would supersede the

commissioners then in office; but such title did give notice to the Legislature and the public that such act by its provisions merely added new members to the existing board, thus increasing such board to one of nine members. This act being unconstitutional in so far as it attempts to provide for the election of a new board to supersede the old board, and inasmuch as this was the sole purpose of the election the calling of which was restrained, the trial court rightfully issued the order from which this appeal was taken.

GATES, J., takes no part in this decision.