CHRISTOPHERSON, Petitioner, v. REEVES, as State Auditor, Respondent.  (State of South Dakota, Intervener.)

(184 N. W. 1015.)

(File No. 4981.  Opinion filed October 27, 1921.)

1.  **Constitutional Law—Fees and Salaries—Member of Legislature, Expense Allowance, Legislative Appropriation of Lump Sum for Traveling Expenses, Increased Cost of Living, Whether an Increase of Salary—Constitutional Provisions Construed—McCoy v. Handlin, and State ex rel Payne v. Reeves, Followed.**

Under Const., Art. 3, Sec. 6, providing that terms of office of members of Legislature shall be two years, that they shall receive for their services $5 for each day's attendance during legislative session and 5c per mile for each mile of necessary travel in going to and returning from place of meeting of Legislature, that each regular legislative session shall not exceed sixty days * * * and that members of Legislature "shall receive no other pay or perquisites except per diem and mileage;" and Art. 12, Sec. 3, providing that Legislature shall never grant any extra compensation to any public officer * * * after the services shall have been rendered or the contract entered into, etc.; and Art. 4, Sec. 13, providing that powers and duties of certain state officers, including state auditor, shall be as prescribed by law; and Laws 1921, Chap. 279, providing that whenever a member of state Legislature, whose legal residence shall be at some other place than the state capital, shall attend any regular session of the Legislature at the state capital, there shall be paid each member in consideration of expense incident to traveling to state capital and the increased expense of living "at a place other than his legal residence during the regular session of Legislature" the fixed sum of $200 "to cover the expenses of such members incident to their being away from home in the discharge of their duties, which fixed sum shall be paid to each such member of the Legislature at the close of the regular session * * * upon certified voucher * * * being filed in the office of the State Auditor," this Court, in McCoy v. Handlin, 35 S. D. 487, and in State ex rel Payne v. Reeves, 44 S. D. 568, 184 N. W. 993, disposed of and settled question of propriety of lump sum for expenses, as also the question of legislative power to provide

expense money for constitutional officers; unless the peculiar language of Art. 3, Sec. 6, Const., necessitates a different decision in this proceeding; and held, that petitioner, whose place of residence was in Sioux Falls, Minnehaha County, South Dakota, and whose absence from home as a member of the Legislature during the session of the Legislature convening in January, 1921, was necessary, was entitled to such legislative allowance of $20.0 in addition to the compensation of $5. per day and mileage, as provided by the Constitutional provision.

2.  **Constitutional Law, Statutes—Construction Of, When Words Presumptively Used in Ordinary Sense, Exception to Rule.**

It is elementary that in construing a constitutional or statutory provision, the words must be taken, and are presumed to have been used in their usual and ordinary sense, unless there is a constitutional or statutory definition of the word, which of course would control, or unless the context is so plainly repugnant to the usual and ordinarily accepted meaning of the word as of very necessity to impose another meaning upon it.

3.  **Fees and Salaries—Legislative Member, Constitutional Mileage Provision For, "Necessary Travel," "No Other Pay or Perquisite Except Per Diem and Mileage," Whether Excluding Reimbursement for Expense—"Pay," "Perquisite" Defined—Legislative Power To Provide Expense Money Defined.**

Under Const., Art. 3, Sec. 6, providing for two year terms of legislative members, that they shall receive "for their services" $5. for each day's attendance during legislative session and 5c per mile of necessary travel in going to and returning from place of meeting of Legislature, and that each regular legislative session shall not exceed 60 days, except, etc., and that legislative members "shall receive no other pay or perquisite except per diem and mileage;" held, that the word "pay" as there used means compensation; that the word "perquisite" therein means allowance beyond the ordinary valued salary or fixed wages for services rendered, especially a fee allowed by law to an officer for a specific service; emolument or incidental profits attaching to an office or official position beyond salary or regular fee; and said terms do not mean moneys allowable for expenses; that the ordinary accepted meaning of the word "perquisite," is a reward, compensation, profit or gain arising out of or received because of possession of a public office; that the words "for their services," used in the first paragraph of said Sec. 6, refer to the per diem allowance and also to the mileage allowance, more especially in that in the second paragraph the words "pay or perquisite" are used with reference to the words "per diem and mileage," i. e., per diem and mileage are allowed for services performed as "pay and perquisites," and not for payment of expenses; that the con-

tention that the constitutional convention meant that mileage should go to defray expenses, is untenable, that if such were the intention the use of the word "perquisite," in the succeeding paragraph, is incorrect, but Court may not presume they used it in any other than its usual sense; that the course followed by said convention in fixing compensation is neither novel nor unreasonable; and, the Constitution being a limitation and not a grant, the Legislature, not being forbidden by the Constitution, possessed inherent power to provide expense money.

4. **Constitutional Law—Legislative Provision for Lump Sum Expense, Whether Depriving Auditor of Right to Audit—Constitution—Later Statute, Whether Repugnant or Supplemental to Earlier.**

Const., Art. 4, Sec. 13, provides that powers and duties of State Auditor shall be as prescribed by law; and Art. 12, Sec. 4, provides that an itemized statement of all receipts and expenditures of public money shall be published annually in manner provided by Legislature, that same shall be submitted to Legislature at beginning of each regular session. Sec. 5342, Code 1919, makes it duty of Auditor to examine all claims against state, and for sums found due from state, to issue warrants payable at State Treasury; Sec. 5345 provides for verified accounts, and prescribes manner in which they shall be presented, itemized, etc. Held, that said statutory provisions do not deprive State Auditor of his right to discharge his constitutional and statutory duties in the auditing of claims against state; since his account will in any event exhibit the warrants issued to persons entitled to receive these payments, and amount of each warrant, and, the law being authority for paying them, his accounts will exhibit everything required; he must still ascertain that the person presenting claim is by law entitled thereto, that the amount is the amount fixed and allowed by law, that the claim is presented in legal form; when he has done these things he has audited the account, and wherein said Chap. 279, Laws 1921, requires that the accounts shall be paid on certified vouchers, if it is impossible to construe Sec. 5345, Code 1919, in harmony with such provision, it would follow that repeal of that section, wherein it pertains to expense allowance of the Legislature, would have been effected; but held, that said chapter, while in pari materia with said provisions of the Code, yet deals with a subsequent provision for expense money, and is supplemental to, and not repugnant to the provisions of the earlier enactment.

5. **Fees and Salaries—Compensation to Legislators, Appropriation During Session, Whether Extra Compensation After Services**

Rendered—Emergency Clause as Affecting Question—"Compensation," Constitutional Meaning Of.

The fact that Chap. 279, Laws 1921, was approved January 31st, 1921, and that it contains an emergency clause, does not render it violative of Const., Art. 12, Sec. 3, providing that the Legislature shall never grant any extra compensation to any public officer, employee, agent or contractor after the services have been rendered or the contract entered into. So held, against state's contention that the effect of the act is to increase the compensation of members of the Legislature through an act passed before the services at the legislative session are ended. That said chapter does not provide compensation, but expense money, and for a legitimate purpose; that the word "compensation" as employed in Sec. 3, Art. 12, Const., is synonymous with salary, pay or emolument, and means reward or compensation for official service, and not repayment of expenditures allowable by law. Held, further, that if said law was effective before commencement of this proceeding, it is operative now, regardless of when it took effect.

6.  Same—Compensation to Legislators, Constitutional Provision, Non-application of to Expenses—Silence of Constitution Re Expense, Presumption Re.

Const , Art. 3, Sec. 6, providing that members of Legislature shall receive "for their services" $5. per day for attendance during legislative session, and 5c per mile for necessary travel, etc., refers to compensation, therefore does not inhibit the legislative appropriation in Chap. 279, Laws 1921, for expense of such members; and where, as here, Constitution is silent as to allowance for necessary expense of public officers, it will be presumed it left that matter to discretion of the people acting through Legislature.

Hayes, P. J., and Rice, J., dissenting.

Original proceeding by A. Christopherson, against Jay Reeves, as Auditor of the State of South Dakota, for a peremptory writ of mandamus commanding him to issue a warrant on the State Treasurer in favor of Plaintiff for reimbursement for alleged expenses incurred as a member of the State Legislature; the State of South Dakota intervening. Writ granted.

An order having been made by the Supreme Court of the State of South Dakota finding that the regular judges thereof, and all of the circuit judges in and for the several circuits of the State of South Dakota, were, by reason of their interest in a similar question, disqualified to sit in this proceeding, and the Court, pursuant to the provision of Art. 5, Sec. 7, Constitution of the State of South Dakota, and Chap. 343 of the laws of South

Dakota for the year 1919, having appointed from the attorneys of record of said Court, *Robert C. Hayes* of Deadwood, *T. H. Null* of Huron, *George Rice* of Flandreau, *A. H. Orvis* of Yankton, and *Lewis W. Bicknell* of Webster, to act as judges of the Supreme Court in place of the disqualified judges, and said persons having qualified by filing the oath of office required by law, and organized as a court, *Robert C. Hayes,* presiding, they proceeded to hear and determine this cause as the Supreme Court of the State of South Dakota.

*Danforth & Barron,* and *Bailey & Voorhees,* for Petitioner.

*Byron S. Payne,* Attorney General, and *E. D. Roberts,* Assistant Attorney General, for Respondent, and for the State.

(1)    To point one of the opinion, Plaintiff cited: 12 Corpus Juris, 799-800; Smith v. Jackson, 241 Fed. 747, 154 C. C. A. 449, affirmed in 246 U. S. 388, 62 L. Ed. 788, 38 Sup. Ct. Rep. 352; State ex rel. Langer v. Kositzky, 38 N. D. 616, N. W. 543; State ex rel. Welden v. Thomason, 142 Tenn. 536, 221 S. W. 491; Milwaukee County v. Halsey, 149 Wis. 82, 136 N. W. 139; Kirkwood v. Soto, 87 Cal. 394, 25 Pac. 901; Briscoe v. Clark Co., 95 Ill. 309; Ware v. City of Battle Creek, 201 Mich. 468, 167 N. W. 891, L. R. A. 1918E, 673; 23 Am. & Eng. Encyc. of Law, 388; Territorial Sess. Laws 1887, "Organic Laws," pages 7, 8; and submitted that: It is not within province of courts to inquire into motives of legislative bodies, nor to question statements of fact found by that body. That members of Legislature are bound to reside at capital during legislative session.

Defendant and Intervener cited:  Holsey v. City of Belle Plaine (Ia.) 104 N. W. 494; People v. Harding, (Mich.) 19 N. W. 155; Perry v. Gross (Colo.), 156 Pac. 1031; Rhode Island v. Massachusetts, 12 Peters (U. S.) 657; Buchanan v. Hicks Co. (Ore.), 133 Pac. 780; 134 Pac. 1191; Cox v. Robinson, 150 S. W. 1149; Newell v. People, 7 N. Y. 9; and submitted that: Under Const., Art. 3, Sec. 6, which is full and explicit as to compensation and expenses of Legislative members, it was evident intention to state unequivocally the amount of per diem and mileage receivable; relying on rule "expressio unius est exclusio alterius;" citing thereto: Sutherland on Statutory Construction, 410; 19 Cyc. 23; 12 C. J. 707; State v. Electric Light & Power Co. (Ariz.) 138 Pac. 781; People ex rel, Evangelisch Lutheusche

Jehoval Gemeinde, 94 N. E. 162. That any allowance for mileage in excess of five cents per mile is violative of Const.; that the allowance of $200. under Chap. 279, Laws 1921, can not be regarded as payment in consideration of traveling expenses or mileage to State Capitol to attend legislative session; citing Laws 1921, Chap. 46. That living expenses of an official can not be paid by state, i. e., an allowance for personal support or enjoyment while in office; citing: Clyne v. Bingham County, 60 Pac. 76; Terrill v. Middleton (Tex.), 187 S. W. 376; Lackenby v. Post Printing Co. (Colo.), 176 Pac. 490; Bailey v. Kelly (Kas.), 79 Pac. 735; State ex rel. Fox v. Raine, 31 N. E. 741. That such allowance is such as to increase the compensation of officers; citing: 29 Cyc. 1429; Cullom v. Dolloff, 94 Ill. 330; Fritzell v. Holmes (Ky.), 115 S. W. 246; Leckenby v. Printing Co., supra. That legislature cannot transcend limitations imposed by people in Constitution; citing: Hudges v. Snyder (S. D.) 178 N. W. 575; Ill. Cent. Ry. Co. v. Quarry Co. (S. D.) 144 N. W. 724; Terrill v. Middleton, 191 S. W. 1139; Fergus v. Russell, (Ill.) 110 N. E. 130; State v. Thomason (Tenn.) 221 S. W. 491.

(4) To point four, Defendant and Intervener cited: People v. Brady, 277 Ill. 124.; Secs. 5342, 5347, Code 1919; Const., Art. 11, Sec. 12.

(5) To point five, Defendant and Intervener cited: Const., Art. 12, Sec. 3. And re emergency clause, cited: State ex rel. Richards v. Whisman, 36 S. D. 260; Hodges v. Snyder, 43 S. D. 166; State ex rel. Loe v. Davis, 41 S. D. 327; State ex rel. Flanagan v. Taylor, 43 S. D. 264; State ex rel. Clausen, 148 Pac. 28, Ann. Cas. 1916B, 810; note to last case, p. 826.

BICKNELL, J. The petitioner asks a writ of mandamus, directed to the respondent Reeves as State Auditor, commanding him forthwith to issue to petitioner a warrant for the sum of $200, being his expense allowance as a member of the Legislature of the state of South Dakota, under the provisions of chapter 279, Laws of South Dakota for 1921. The petition recited, in substance, that the petitioner was a duly elected and qualified member of the House of Representatives from the Tenth district of Minnehaha county, S. D., who was in regular attendance at the session of the Legislature of South Dakota beginning on the 4th of January, 1921, and adjourning on the 4th of March, 1921; that

at said session of the Legislature there was passed an act known as chapter 279 of the Session Laws of South Dakota for 1921, which is set out in full, and which provides for the payment of $200 to each member of the Senate and House of Representatives of South Dakota:

"In consideration of the expense incidental to traveling to the state capital and the increased expense of living at a place other than his legal residence during the regular session of the Legislature," the sum above prescribed, "to cover the expenses of such members incident to their being away from home in the discharge of their duties," etc.

The petition also recites the passage of chapter 50 of the Session Laws of South Dakota for 1921, which is the appropriation act providing funds to meet the requirements of the law above referred to; the passage of chapter 279 with an emergency clause and its approval by the Governor; the election and qualification of the respondent as State Auditor; the presentation by petitioner of a certified voucher for the amount of money above referred to; the refusal of the respondent to draw the warrant upon such voucher; the residence of petitioner in the city of Sioux Falls, Minnehaha county, S. D., and his necessary absence from his home in the discharge of the duties of his office. To this petition the auditor has demurred, and the state of South Dakota, added as a party in intervention, joined in the demurrer.

It is the contention of the Attorney General, appearing for the Auditor and for the state, that the statute granting the sum of $200 to each member of the Legislature for expenses and the purposes therein specified is unconstitutional, violating section 6, art. 3, of the Constitution of the state of South Dakota; that it conflicts with the provisions of section 3 of article 12 of the Constitution; and that it is in violation of the terms of article 4, § 13, of the Constitution, prescribing and fixing the duties of the State Auditor, in that it prevents him from exercising and discharging his duties, and in support of these contentions it is urged that the Legislature may not in advance of an expenditure audit and estimate the amount thereof; that the effect of the act in question is to increase the compensation of the public officers to whom the sum of $200 is available, in violation of the aforesaid constitutional provision; that the grant of expense money in a lump sum

is in violation of the spirit and provisions of the Constitution; that the Auditor is deprived of his functions if the expenses are estimated in advance and a fixed sum for such expenses is determined and allowed; and that the expenditure violated the provisions of section 3, art. 12, of the Constitution, in that it provided additional compensation for services after the same had been partly rendered, and in this connection the Attorney General pointed out that the act was passed on January 31st, when the duties of the Legislature, under the terms fixed by the Constitution, had been almost half performed.

1. This court, in the case of McCoy v. Handlin, 35 S. D. 487, 153 N. W. 361, L. R. A. 1915E, 858, Ann. Cas. 1917A, 1046, and in the case of State ex rel. Payne v. Reeves, 184 N. W. 993, decided at this term of the court, has disposed of the question of the propriety of a lump sum for expenses, and the accompanying question of the power of the Legislature to provide expense money for constitutional officers.

As was said by this court in the case of McCoy v. Handlin, supra:

"The Legislature had the right, if deemed best as a matter of public policy, to enact the law which it did enact, provided it did not make the allowance greater than the expenses it was designed to cover; and it was for such Legislature to determine a reasonable and proper amount. It is clear that the Legislature did not intend, in the enactment of such legislation, to increase the salaries of the judges, or grant them any perquisite or emoluments for the discharge of their duties, but only intended to assure them, in so far as possible, that for the performance of their official duties alone, and not for the performance of such duties and the payment of expenses incident thereto, they should receive the salaries provided by law for the performance of such duties."

Speaking further on the same subject, the court said:

"One question will be found running through all the decisions wherein courts have passed upon the validity of statutes providing allowances to public officers, to-wit: Was the purpose of the Legislature to increase the salary, or was its purpose merely to save such salary, so that the officer would, in fact, receive the whole thereof, for the performance of his official duties."

41—Vol. 44, S. D.

The court having sustained the proposition in that decision and in the more recent one above cited, the law upon the point is settled, unless the peculiar language of the section of the Constitution here before us necessitates a different decision in this proceeding.

It is the contention of the Attorney General that the words "five cents for every mile of necessary travel," in section 6 of article 3 of the Constitution, necessarily imply the idea that this is a provision for expense, and that the expression "no other pay or perquisite except per diem and mileage" necessarily excludes the idea of any reimbursement for expense upon any theory whatsoever.

[1] It is elementary that in construing a constitutional or statutory provision the words must be taken, and are presumed to have been used, in their usual and ordinary sense, unless there is a constitutional or statutory definition of the word, which, of course, would control, or unless the context is so plainly repugnant to the usual and ordinarily accepted meaning of the word as, of very necessity, to impose another meaning upon it.

Having the foregoing principle in mind, let us examine the language of section 6 of article 3 of the Constitution. It provides:

"The terms of the office of the members of the Legislature shall be two years; they shall receive for their services the sum of five dollars for each day's attendance during the session of the Legislature, and five cents for every mile of necessary travel in going to and returning from the place of meeting of the Legislature on the most usual route.

"Each regular session of the Legislature shall not exceed sixty days, except in cases of impeachment, and members of the Legislature shall receive no other pay or perquisite except per diem and mileage."

[2] The word "pay," as used in the foregoing portion of the Constitution of South Dakota, means compensation. 6 Words and Phrases, First Series, 5243. The word "perquisite" is variously defined as follows:

"An allowance paid in money or things beyond the ordinary valued salary or fixed wages for services rendered, especially a fee allowed by law to an officer for a specific service." Webster.

"Emolument or incidental profits attaching to an office or official position beyond the salary or regular fee." Black, Law Dictionary.

"Perquisite means something gained by a place or office beyond the regular salary or fee." Bouvier's Law Dictionary.

The foregoing definitions of this word, the correct interpretation of which is highly important here, are quoted with approval in the case of Ware v. City of Battle Creek, 201 Mich. 468, 167 N. W. 891, L. R. A. 1918E, 673, 674. In that case it is held that the word "perquisite" means emolument or profit beyond the salary paid to the officer in question, and, the court proceeds, "cannot be said to mean moneys which were allowed him for expenses, because there was no profit or emolument to him in the allowance for office rent which he had to disburse." Thus it will be seen that the ordinary accepted meaning of the word "perquisite" is a reward, a compensation, a profit, or a gain arising out of, or received because of, the possession of a public office. Nowhere is the word used as synonymous with, or inclusive of, expenses.

Quoting the second paragraph of section 6 of article 3 of the Constitution, the Attorney General asks, after having recited the words "no other pay or perquisite except per diem and mileage:"

"Could the framers of the Constitution have used language which would with more force indicate their intention that the members of the Legislature should receive no compensation or *expenses*, other than per diem or mileage?"

We have italicized the word "expenses" in the quotation from the Attorney General's brief to bring to notice the fact that he himself had used language which more strongly and explicitly indicates the meaning which he contends should be given the Constitution than the language of the Constitution indicates; indeed, which reads into the Constitution a meaning which we cannot find there.

On the other hand, we are satisfied that the words "for their services," used in the first paragraph of section 6, refer to the per diem allowance, and also to the mileage allowance; and this interpretation is strengthened by the fact that in the second paragraph of the same section the words "pay or perquisite" are used with reference to the words "per diem and mileage;" in other

words, the per diem and mileage are allowed for the services performed as "pay and perquisites," that is, as compensation, reward, or gain arising from the enjoyment of the office, and not for the payment of expenses.

[3]   It is easy enough to argue that the constitutional convention meant that the mileage should go to defray expenses, but they did not say so, and we have no right, 35 years after the event, to read into their work that which does not appear on its face.   If they intended the per diem above mentioned to be allowed for expense money, the use of the word "perquisite" in the succeeding paragraph is incorrect and improper.   We have no right to presume that they used it in other than its usual sense. And it is entirely consistent with logic and reason that the members of the Legislature, coming from different parts of the state, traveling different distances, which necessitated varying periods of actual service, should have been paid by a fixed per diem during the period of actual attendance at the Legislature, and by further compensation adjusted and equalized among them by reference to the distance they traveled.   Such a way of fixing compensation is neither novel nor unreasonable.   We conclude, therefore, that an intelligent and correct construction of the language of the Constitution imposes the necessity of holding that the words "per diem" and "mileage" are referred to in section 6 of article 3 of the Constitution as compensation for services.   This being so, under the familiar principle that the Constitution is a limitation and not a grant, it follows that the Legislature, not being forbidden by the Constitution, possesses inherently the power to provide expense money, and the provisions of law recited in the petitioner's bill are not in conflict with this section of the Constitution.

Our attention was called, on the argument, and by the briefs of counsel, to the case of State ex rel. Weldon v. Thomason, 142 Tenn. 536, 221 S. W. 491.   The facts, the discussion of the law in this case, and the provisions of the Constitution of Tennessee, as restricted by the interpretation by the Supreme Court of that state, render it instructive and convincing and fully in line with conclusions hereinbefore announced, and it is cited with approval, but without relying upon it entirely, for the reason that the constitutional provisions of the several states differ in such important

particulars as to render the interpretation of them by the courts available to us rather for comparison and by way of argument than as precedents. We have also examined and considered the following authorities, which sustain our conclusion and are in point: Throop on Public Officers, 1442; 29 Cyc. 1427, 1429; Briscoe v. Clark Co., 95 Ill. 309, 311; State v. Atherton, 19 Nev. 332, 10 Pac. 901, 910; Kirkwood v. Soto, 87 Cal. 394, 25 Pac. 488; Newmon v. Lester, 11 Cal. App. 577, 105 Pac. 785; People ex rel. Follett v. Fitch, 145 N. Y. 261, 39 N. E. 972; State v. Sheldon, 78 Neb. 552, 111 N. W. 372; Milwaukee County v. Halsey, 149 Wis. 82-85, 136 N. W. 139; Russ v. Commonwealth, 210 Pa. 544, 60 Atl. 169, 1 L. R. A. (N. S.) 409, 105 Am. St. Rep. 825.

The Attorney General, in his brief, quotes at length from, and relies upon, the decisions of the Appellate Court of Illinois in the cases of Fergus v. Russell, 270 Ill. 626, 110 N. E. 887 and 270 Ill. 304, 110 N. E. 130, Ann. Cas. 1916B, 1120, where an injunction was sought against the auditor of public accounts to restrain him from issuing warrants for various expenses to the members of the General Assembly. Statutes had been passed appropriating sums for mileage and for telephone services to the members of the Assembly under a Constitution which provided (section 21, art. 4, Constitution of Illinois) that—

"Members of the General Assembly are prohibited from receiving, in addition to such salary as may be fixed by law, 'any other allowance or emolument, directly or indirectly, for any purpose whatever, except the sum of $50 per session to each member, which shall be in full for postage, stationery, newspapers and other incidental expenses and perquisites.' "

Thus it will be seen that the framers of the Constitution of that state provided for expenses, mentioned them expressly in the Constitution, and used the word as distinguished from the word "perquisite," and the interpretation of this Constitution must, of necessity, have precluded any other allowance for mileage or for other expenses. If the word "expenses" had occurred in our Constitution, we would not hesitate for one moment to declare the law unconstitutional. It is the absence of this word, and the absence of any provision limiting the right of the Legislature to provide expenses, which makes it difficult for us to see the applicability of this case to the matter at bar.

2. But it is contended that the provision of a lump sum of expense money deprives the Auditor of the discharge of his constitutional duties. Section 13 of article 4 of our Constitution provides that the powers and duties of the Auditor shall be as prescribed by law. The Legislature has prescribed the duties of the Auditor generally by sections 5342 to 5352, both inclusive, of the South Dakota Revised Code. Under the terms of section 5342 it is made the duty of the Auditor to examine all claims against the state, and for the sums which shall be found due from the state to issue warrants payable at the state treasury. Section 5345 provides for verified accounts. It also prescribes the manner in which these accounts shall be presented, itemized, etc. And it is contended by the Attorney General that section 4, art. 12, of the Constitution, providing for an itemized statement of all receipts and expenditures of the public money to be published annually in the manner provided by the Legislature, and that the same shall be submitted to the Legislature at the beginning of each regular session, is violated, because the Auditor cannot itemize the expense accounts of the officers to whom the money for expenses is granted in a lump sum.

[4] This, it seems to us, is not logical. His account will, in any event, exhibit the warrants issued to the several persons entitled to receive these payments and the amount of each warrant, and, as the law is the authority for paying them, his accounts will exhibit everything that could be required. Indeed, it is difficult to see the force of the contention that the Auditor is in anything hindered in the discharge of the duties of his office by this practice, for he must still ascertain that the person presenting the claim is by law entitled to do so; that the amount is the amount fixed and allowed by law; that the claim is presented in the form required by law; when he has done these things he most certainly may be said to have audited the account. To be sure, the law in question provides that the account shall be paid on certified vouchers, and this might be in conflict with section 5345 of the Revised Laws of 1919. If it is, indeed, impossible to construe it in harmony with those provisions, it necessarily follows that a repeal of that section, so far as it pertains to the expense allowance of the Legislature, would have been affected. We hold, however, that the law, while in pari materia with the provisions of the

Code, deals with a subsequent provision for expense money, and should be construed as supplemental to and not repugnant to the provisions of the earlier enactment.

3.  Coming now to the contention that the law in question is unconstitutional for violation of section 3 or article 12 of the Constitution, it is argued that chapter 279, Laws of 1921, operates to grant extra compensation to a public officer in violation of the constitutional prohibition.  And in this connection it was also contended that the court should examine the question of whether or not the emergency clause, added to chapter 279, Laws of 1921, operates to render the act effective before the 1st of July, 1921, and it was argued that the law did not take effect until July 1, 1921, and that even if the allowance of $200 to each member of the Legislature for expenses would be a valid enactment as to legislators at the next session, it cannot apply to the members of the present Legislature who served during the 1921 session.

The entire argument, whether directed against this law because of the emergency clause, or directed against it because of the allowance of $200 a year for expense money, is based upon thes ame hypothesis, that is, that the effect of this act is to increase the compensation of a public officer.  So it is urged by counsel in a supplemental brief that the act creates "a new right to compensation for expenses," etc.  This quotation, with its involved and extraordinary phraseology, is an excellent index to the character of reasoning which we must, of necessity, adopt, if we are to sustain this contention.

[5]   We hold that chapter 279, Laws of 1921, was not an act providing compensation, but, on the other hand, that it provides expense money for a perfectly legitimate purpose.  We hold that the word "compensation," as employed in section 3, art. 12, of the Constitution of South Dakota, is synonymous with salary, pay, or emolument, and is intended to convey the idea of reward for, or compensation for official services; that it does not convey the idea of the repayment of expenditures allowable by law.  It follows, as a matter of course, that the payment of expenses, not being prohibited by the direct language of the Constitution nor any necessary inference arising therefrom, is a valid and proper subject for legislative enactment.

We do not feel called upon to decide, and therefore refrain

from expressing an opinion, as to whether the emergency clause contained in chapter 279, Laws of 1921, is or is not operative. The law became effectual, in any event, before the commencement of this proceeding, and, as it provides for expense money only, is operative now without regard to the time of its taking effect.

In this connection it is well to recall the language of the Supreme Court of Tennessee in the case of Weldon v. Thomason, previously cited:

"That the expenses of public officers incurred in the performance of their official duties are distinct from and not included in the compensation allowed them, unless authoritatively so declared, is well established upon reason and authority, and the apparently uniform concensus of opinion in those cases wherein the question has been considered is to the effect that constitutional prohibitions against change in the compensation fixed for public officers are not intended to be construed as limitations upon legislative authority to provide for the expenses of such officials."

It is urged that to sustain chapter 279, Laws of 1921, will nullify section 6 of article 3 of the Constitution. This we do not concede. This section refers to compensation, and as such will be upheld and enforced by the courts, but, as pointed out by the Supreme Court of Tennessee ('Wendel v. Thomason, supra), where the Constitution is silent as to allowance for necessary expenses of public officers, it is to be presumed that it left that matter to the discretion of the people, acting through their Legislature.

The writ of mandamus should be granted, and it is so ordered.

HAYES, P. J. (dissenting.)     Article 3, § 6, of the state Constitution, provides that the members of the Legislature shall receive for their services the sum of $5 per day for each day's attendance during the session of the Legislature, and 5 cents for every mile of necessary travel in going to and returning from the place of meeting of the Legislature. The $5 per day is a recompense for services and necessarily attendant personal expenses at Pierre, and the mileage covers time and expense in reaching the place of meeting. The allowance of $200 in this act is in conflict with the closing paragraph of this section of the

Constitution declaring that the members of the Legislature shall receive no other pay or perquisite except per diem and mileage.

The fundamental law declares, in effect, that members of the Legislature shall receive $5 a day for each day's attendance, receive also 5 cents a mile for necessary travel, and no other compensation. An allowance of $200 for expenses incident to travel to the state capital and for increased expense of living there during the session is compensation both for travel and attendance additional to that fixed by the Constitution. The Legislature has no power, under the guise of "expense," to add $200 to the per diem and mileage prescribed by said section 6.

RICE, J. (dissenting.) The writer does not agree with the majority of the court as to the construction of the Constitution or the statute involved. The real question involved in this proceeding is the constitutionality of section 1 of chapter 279, Laws 1921, which is as follows:

"Be it enacted by the Legislature of the state of South Dakota: Section 1. That whenever a member of the state Legislature, whose legal residence shall be at some other place than the state capitol, shall attend any regular session of the state Legislature at the state capitol there shall be paid such member in CONSIDERATION OF THE EXPENSE INCIDENTAL TO TRAVELING to the state capitol and the increased expense of living at a place other than his legal residence during the regular session of the Legislature the fixed sum of two hundred dollars ($200.00) to cover the expenses of such members incident to their being away from home in the discharge of their duties, which fixed sum shall be paid to each such member of the Legislature at the close of the regular session which such member attended upon certified vouchers of each such member being filed in the office of the State Auditor."

This law contravenes section 6 of article 3 of the Constitution, fixing the term of office and pay of members of the Legislature, providing:

"They shall receive for their services the sum of five dollars for each day's attendance during the session of the Legislature, and FIVE CENTS FOR EVERY MILE OF NECESSARY TRAVEL in going to and returning from the place of meeting of the Legislature on the most usual route, * * * and members

of the Legislature shall recive no other pay or perquisites except PER DIEM AND MILEAGE."

The Constitution having expressly provided that the members of the Legislature shall receive both per diem and mileage, by implication prohibited them from receiving either directly or indirectly anything more for any purpose. "Expressio unius est exclusio alterius." If the Legislature had sought to enact a law in direct violation of the inhibition of the Constitution, it could scarcely have used more apt language.

"The object of construction, as applied to a written Constitution, IS TO GIVE EFFECT TO THE INTENT OF THE PEOPLE IN ADOPTING IT. In the case of all written laws it is the intent of the lawgiver that is to be enforced." Cooley's Con. Lim. (5th Ed.) p. 68.

The majority opinion devotes much space to commenting upon the construction the courts have given to certain words of the Constitution, and reached the conclusion that the provision under consideration for the payment of $5 for each day's attendance and 5 cents per mile for travel is for COMPENSATION and not for EXPENSES, and that the prohibition against the members receiving any other PAY or PERQUISITE except PER DIEM and MILEAGE does not prohibit them from receiving their living expenses while at Pierre and expenses for travel in going to and returning from Pierre. The word "mileage" in the Constitution is the equivalent of "traveling expenses." In other words, if the framers of the Constitution, instead of writing "mileage," had written "traveling expenses," it would have meant exactly the same thing."

"MILEAGE is a compensation allowed by law to officers for their trouble and expense in traveling on public business." 2 Bouv. Law Dict. 2209.

This definition has been universally adopted by the courts.

Mileage "is defined in the Century Dictionary as 'payment allowed to a public functionary for the expenses of travel in the discharge of his duties, according to the number of miles passed over.' The same definition substantially is found in Bouvier's and other law dictionaries." Richardson v. State, 63 N. E. 593, 594, 66 Ohio St. 108.

"The term 'mileage' has a well-defined legal meaning, and

signifies usually compensation allowed by law to officers for their travel, and expenses in traveling on public business. Richardson v. State, 10 O. C. D. 458, 460 (citing Bouv. Law. Dict. vol. 2, p. 409.)" 5 Words and Phrases, First Series, p. 4502.

The Supreme Court of Wyoming adopts Bouvier's definition. Board v. Blakely, 20 Wyo. 259, 123 Pac. 77, Ann. Cas. 1915B, 584.

At the time the Constitution was adopted Webster's Unabridged Dictionary was recognized as the standard dictionary. About that time the Legislature enacted a law requiring each school district to purchase a Webster's Unabridged Dictionary. If the average voter, wishing to know the meaning of the constitutional provision now under consideration and what was meant by mileage, had examined Webster's Dictionary, he would have found it defined as follows:

"An allowance for traveling expenses at a certain per cent. per mile."

There cannot be the slightest doubt as to what every voter understood the constitutional provision to mean. The Constitution expressly provided for paying the members their traveling expenses and, if not directly at least by implication, prohibited the payment to them of any other expenses. The statute under consideration is a plain violation of the Constitution. Expenses incurred in conducting the business of the Legislature are entirely distinct from the personal expenses of the individual members.

Quoted words in capital letters do not indicate that the original was so printed.

The petition for a peremptory writ of mandamus should be denied.