John J. SIMPSON, William F. Day, Jr., Mick Grossenburg and Stanley E. Whiting, for and in behalf of the other taxpayers of Tripp County, South Dakota, Plaintiffs and Appellees,

v.

Tommy Drake TOBIN, Defendant and Appellant.

Nos. 14096, 14619.

Supreme Court of South Dakota.

Argued Nov. 26, 1984.

Decided May 1, 1985.

Rehearing Denied June 17, 1985.

J.M. Grossenburg of Day, Grossenburg & Whiting, Winner, for plaintiffs and appellees; William F. Day, Jr. and Stanley E.

Whiting of Day, Grossenburg & Whiting, John J. Simpson, Winner, on brief.

Jack Theeler of Morgan, Fuller, Theeler & Cogley, Mitchell, for defendant and appellant.

HERTZ, Circuit Judge.

This is an appeal by appellant Tommy Drake Tobin (Tobin) from a final judgment disallowing a claim for legal services filed by Tobin and approved and paid by a majority of the members of the county commission of Tripp County, South Dakota (Appeal # 14096). Appeal is also taken from the supplemental judgment entered by the trial court, which held House Bill 1266 unconstitutional (Appeal # 14619). The South Dakota State's Attorneys Association was authorized by this court to file an amicus curiae brief as to the constitutionality of House Bill 1266.

Appeal # 14096 stems from an action brought by appellees on behalf of the taxpayers of Tripp County against Tobin for the recovery of $101,691.79 paid to Tobin for certain legal services rendered pursuant to an agreement between Tobin and the county commission.

Tobin at all times material to the action was the duly elected and acting state's attorney of Tripp County, South Dakota. By a resolution duly passed on April 13, 1976, the Tripp County Board of County Commissioners authorized Tobin to proceed with certain litigation in federal or state court. A "Memorandum of Understanding" was executed on October 31, 1978, confirming the agreement and prescribing that certain hourly fees and costs be paid for such services. This "Memorandum of Understanding" was signed by two of the county commissioners and by Tobin.

On January 5, 1982, Tobin accepted a check in the sum of $101,691.79. Four days later appellees commenced a taxpayer action seeking a refund of the payment.

The trial court subsequently ruled that the payment was illegal and by a judgment dated December 20, 1982, Tobin was ordered to reimburse Tripp County.

By order of this court Appeal # 14096 was remanded to the trial court with instructions to make a determination on the constitutionality of House Bill 1266. The trial court entered a supplemental judgment declaring House Bill 1266 unconstitutional. This judgment is the subject of Appeal # 14619. Appeals # 14096 and # 14619 were then consolidated for argument and disposition.

The issues raised by this consolidated appeal are stated under appropriate headings and are separately treated in this opinion.

*I. Is judicial review of county commission action as provided for in SDCL 7–8–27 and 7–8–28 et seq. an exclusive remedy?*

Appellee taxpayers alleged a cause of action for the recovery of public funds illegally expended under an invalid contract. Tobin urges that appellees were required to appeal either under the provisions of SDCL 7–8–27 or SDCL 7–8–28, and having failed to perfect such an appeal, are barred from pursuing reimbursement of claimed illegally expended funds by suit against him.

■ The pertinent part of SDCL 7–8–27 provides: "From all decisions of the board of county commissioners upon matters properly before it, there shall be allowed an appeal to the circuit court by any person aggrieved...." It is apparent and Tobin admits, that appellees are not "person[s] aggrieved" under this statute. This court has declared that this statute provides for an appeal from decisions of the board of county commissioners only to such persons who suffer personal or individual grievances, as distinguished from those grievances suffered by taxpayers or the public generally. *Houser v. Olmstead,* 57 S.D. 41, 230 N.W. 224 (1930). Therefore, this claimed right of appeal was not available to appellees.

SDCL 7–8–28 sets forth the procedure for general taxpayers' challenges to county commission action:

Upon written demand of at least seven taxpayers of the county, the state's attorney shall take an appeal from any action of such board when such action relates to the interests or affairs of the county at large or any portion thereof, in the name of the county, when he deems it to the interest of the county so to do[.]

This statute requires that at least seven taxpayers concur in the action; that the state's attorney exercise his discretion in determining the merits of the action; and that the action be commenced in the name of the county. SDCL 7–16–2 provides for the appointment of a state's attorney pro tem where the state's attorney refuses to act or has a conflict of interest, as is the situation in the instant case.

██ This court has held on a number of occasions that the strict limitations on the availability of taxpayer challenges to county commission action were enacted to help reduce the number of lawsuits brought by taxpayers in order to prevent continued and unnecessary interference with the conduct of public affairs. *Holmes v. Miller*, 71 S.D. 258, 23 N.W.2d 794 (1946); *State v. Richards*, 61 S.D. 28, 245 N.W. 901 (1932). Essentially all of these cases stand for the proposition that where there is a remedy by appeal, that remedy must be followed, rather than actions in equity or at common law. It is to be noted, however, that none of the cases cited by Tobin involve the payment of public funds to a part-time state's attorney, and there are special statutory restrictions applicable in such cases, as pointed out later in this opinion. In this case, of course, the remedy by appeal is in effect no remedy at all since Tobin had been fully paid and it was from him that a refund is sought. In other words, a successful appeal would only declare the illegality of the payment, it would not and could not restore the illegally paid funds since those funds were in the possession of Tobin, who would not have been a party to the appeal.

In a very early case, *Campbell County v. Overby*, 20 S.D. 640, 642, 108 N.W. 247, 248 (1906), this court recognized the right of a county to recover in an action for illegal expenditures of public funds. The court there said:

The contention that an appeal from the decision of the board allowing defendant's claim was plaintiff's only remedy is clearly untenable.... 'A county board has no power to audit and allow accounts on their face not legally chargeable to the county, and if it does so, it acts in excess of its jurisdiction, and its action will create no legal liability on the part of the county. In accordance with this rule, it has been held that if an illegal charge has been paid in consequence of an improper allowance an action lies at the suit of the county to recover back the money paid.' 7 Am. & Eng.Ency.Law (2d Ed.) 960.

This court has specifically recognized common law taxpayer actions for the recovery of public funds illegally paid by municipalities and townships. *Hauck v. Bull*, 79 S.D. 242, 110 N.W.2d 506 (1961); *Carlson v. City of Faith*, 75 S.D. 432, 67 N.W.2d 149 (1954). Moreover, such actions are clearly encouraged by our legislature. SDCL 15–17–18 states:

The circuit court of this state in the event of a recovery by the plaintiff shall have the power to fix a reasonable sum to reimburse the plaintiff for costs and expenses, including attorney fees, in any action brought in such court by a taxpayer on behalf of himself and other taxpayers similarly situated, to recover into the public treasury of any school district, city or county within this state funds wrongfully expended, misappropriated or misapplied by any governing board or public official of such political subdivision.

This statute even provides for the payment of a reasonable sum for attorney fees (not claimed by appellees here). It is clear the legislature intended that taxpayers keep a vigilant eye on the expenditures of public moneys and then to bring suit where such expenditures appear to be unlawful. Taxpayers' actions for the return to the public treasury of misappropriated funds appear to be especially favored by the courts. 74

Am.Jur.2d, *Taxpayers' Actions*, § 16 (1974).

◼ Since *Campbell, supra,* authorizes counties to commence actions where necessary to recover illegally expended funds, it surely must follow that taxpayers of that same county have a similar right. Furthermore, since Tobin, by virtue of his motion to dismiss, has admitted that the payment to him was a discretionary act and not a quasi-judicial act, the appeal procedures of SDCL ch. 7–8 would not be applicable, since only quasi-judicial acts appear to be appealable under this statute. *Barnum v. Ewing,* 53 S.D. 47, 220 N.W. 135 (1928).

Tobin asserts that there is no common law taxpayer action available to county taxpayers in South Dakota. It is important here to note that SDCL 1–1–24 expressly provides that the common law prevails in those instances where it does not conflict with the code. *Jones v. Woodwarth,* 24 S.D. 583, 124 N.W. 844 (1910). SDCL 1–1–24 declares:

> The evidence of the common law, including the law merchant, is found in the decision of the tribunals.

> In this state the rules of the common law, including the rules of the law merchant, are in force, except where they conflict with the will of the sovereign power, expressed in the manner stated in § 1–1–23.

Tobin would immediately re-assert his claim that a common law taxpayer action for the recovery of public funds illegally expended is in conflict with the appeal provisions of SDCL 7–8–27 and SDCL 7–8–28, and that these remedies are exclusive and bar the present action. However, it is written at 74 Am.Jur.2d, *Taxpayers' Actions,* § 16 (1974), at 209, that:

> Statutory remedies to question the illegal expenditure of public funds have been generally regarded as merely cumulative and not exclusive, because taxpayers have always had the remedy of injunction at common law, without the aid of statutory authority, to enjoin the illegal expenditure of public moneys[.]

As earlier noted, appellees, as taxpayers of Tripp County, are not "person[s] aggrieved" under SDCL 7–8–27 so that the common law taxpayer action is not in conflict with this remedy. Additionally, an appeal under SDCL 7–8–28 would have resulted at most in a declaration of the illegality of the payment to Tobin; it could not restore the illegally paid funds to the Tripp County Treasury. Taxpayers would have been required to commence a separate action after a successful appeal to get the funds restored.

◼ Accordingly, this court is of the opinion that SDCL 7–8–27 and SDCL 7–8–28 are not exclusive remedies, but instead are cumulative remedies only, and that in South Dakota a common law taxpayer action does exist for the recovery of public funds illegally expended. This result is clearly consistent with case law as well as the legislative intent as expressed in SDCL 15–17–18.

II. *Does SDCL 7–16–23 prohibit a part-time state's attorney from receiving extra compensation for legal services performed under a contract with his county?*

In 1977, the South Dakota legislature adopted SDCL 7–16–23, which declared that "a board of county commissioners may not give or pay any fees or costs to a state's attorney as part of his salary or in addition to his salary ..." Excepted from this prohibition are fees for child support enforcement services.

Tobin urges, however, that this statute does not prohibit compensation to the state's attorney for services beyond the scope of his duties as set out in SDCL ch. 7–16. Specifically he calls attention to SDCL 7–16–9, which states:

> It shall be the duty of the state's attorney to appear in all courts of *his county* and prosecute and defend on behalf of the state or his county all actions or proceedings, civil or criminal, in which the state or county is interested or a party. (emphasis added)

It appears that the Attorney General for a number of years has held that state's attorneys are entitled to extra compensation for services performed outside the scope of their statutory public duties. Since Tobin's services dealt with federal court actions, he argues that the same are outside the scope of his regular duties as state's attorney because SDCL 7–16–9 restricts his duties to "all courts of his county."

While we have in the past recognized that Attorney General's opinions should be considered when construing statutes, such opinions are not binding on the courts. *Tulare Independent School District No. 36 v. Crandon School District No. 17*, 47 S.D. 391, 199 N.W. 451 (1924).

Tobin insists that because of the Attorney General's opinions spanning many years, the county commissioners were justified in relying on them as correctly stating the law as it presently exists. The problem here is that none of the Attorney General's opinions construed SDCL 7–16–23, which clearly prohibits extra compensation to state's attorneys beyond their salary, and mentions only the one exception as previously noted. Most disturbing of all is the failure of the "Memorandum of Understanding" executed by Tobin and the Tripp County Commissioners on October 31, 1978, to include any reference to SDCL 7–16–23. The memorandum states in pertinent part:

> We are cognizant of S.D.C.L. 7–16–9 and 7–16–18, but we think the various Attorney General opinions as well as S.D.C.L. 7–16–6 contain sufficient authority to warrant this agreement in light of the extraordinary nature and demands of the above matters.

Tobin, as the state's attorney, was the legal consultant for the county and was obliged to place before the county commissioners all of the law on the subject. The commissioners obviously were then not adequately informed and therefore, could not make an informed and intelligent decision concerning the legality of the then proposed legal services contract.

A statute must be construed according to its manifest intent. Such intent must be derived from the statute as a whole, as well as other enactments relating to the same subject. *Herrmann v. Board of Commissioners of City of Aberdeen*, 285 N.W.2d 855 (S.D.1979). However attractive it might be to liberally construe a statute to avoid a harsh result, this court will not so act when such action would do violence to the plain language of the statute. *Burns v. Kurtenbach*, 327 N.W.2d 636 (S.D.1982). This court will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning and do not lead to an absurd or unreasonable conclusion. *Ogle v. Circuit Court, Tenth (Now Sixth) Judicial Circuit*, 89 S.D. 18, 227 N.W.2d 621 (1975).

SDCL 7–16–23 is clear and unambiguous. It expressly prohibits compensation to a state's attorney beyond his salary with the singular exception of compensation for prosecution of child support matters.

*In Estate of Bode*, 273 N.W.2d 180, 183 (S.D.1979), quoting *Busby v. Reley, et al.*, 6 S.D. 410, 405, 61 N.W. 164, 165 (1894), it states:

> Although repeals by implication are not favored, it is well settled that without a repealing clause two irreconcilably repugnant acts, passed at different times, cannot stand, and that the later operates to repeal the former.

Statutes passed prior to the passage of SDCL 7–16–23, which may have lent credibility to Tobin's argument here, must now give way to the clear prohibition against extra compensation to the state's attorney as declared in the later statute.

There is only one exception contained in SDCL 7–16–23 from the prohibition there declared, and that is the statute permits state's attorneys to be paid for services rendered in child support enforcement cases. There are no other exceptions. If the legislature intended state's attorneys be allowed extra compensation for litigation in state courts or federal courts beyond the county line, it could easily have

said so. The legislature is presumed to have knowledge of the statutes then in force, including SDCL 7–16–9, when it passed SDCL 7–16–23. *State v. Hirsch,* 309 N.W.2d 832 (S.D.1981). Since this latter statute permits only one exception, the conclusion is that state's attorneys are not entitled to extra compensation even when representing their county outside of its boundaries. In our opinion, the enactment of SDCL 7–16–23 repealed by implication the inconsistent portions of SDCL 7–16–9. This conclusion is substantiated by the singular exception to extra compensation appearing in SDCL 7–16–23 as noted above.

*III. Does SDCL 6–1–1 prohibit extra compensation to a state's attorney? If so, does SDCL 6–1–2(3) provide an exception?*

SDCL 6–1–1 is a conflict of interest statute. The statute provides as follows:

It shall be unlawful for any officer of a county, municipality, township or school district, who has been elected or appointed, to be interested, either by himself or agent, in any contract entered into by said county, municipality, township or school district, either for labor or services to be rendered, or for the purchase of commodities, materials, supplies, or equipment of any kind, the expense, price or consideration of which is paid from public funds or from any assessment levied by said county, municipality, township or school district, or in the purchase of any real or personal property belonging to the county, municipality, township or school district or which shall be sold for taxes or assessments or by virtue of legal process at the suit of such county, municipality, township or school district. Such contract shall be null and void from the beginning.

SDCL 6–1–2 sets out certain exceptions to the conflict of interest rule. The portion relied upon by Tobin is SDCL 6–1–2(3), which permits the following contracts:

(3) Any contract with any firm, association, corporation, or cooperative association for which competitive bidding

is not required and where other sources of supply and services are available within the county, municipality, township or school district, and the consideration therefor is reasonable and just, unless the majority of the governing body are members or stockholders who collectively have controlling interest, or any one of them is an officer or manager of any such firm, association, corporation, or cooperative association then any such contract shall be null and void[.]

■ Tobin argues that since he is not a member of the governing body of the county, he is legally entitled to enter into a contract with the county. In so claiming, Tobin ignores the clear directive contained in SDCL 7–16–23, which prohibits a state's attorney from extra compensation beyond his salary. We conclude that there is no exception here which would allow Tobin's claim for services since it would be in direct conflict with the mandate expressed in SDCL 7–16–23. Again we point out that SDCL 7–16–23, adopted in final form in 1978, must take precedent over SDCL 6–1–2(3), which was last amended in 1963. *Estate of Bode, supra.*

■ Furthermore, we point out that a party invoking protection of an exception to a general law must show himself clearly within the terms of that exception. Exceptions in statutes generally should be strictly, but reasonably construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception. *State v. Peters,* 334 N.W.2d 217 (S.D.1983). Tobin has failed to demonstrate that he clearly comes within the terms of the exception he is claiming.

*IV. Does a part-time state's attorney's representation of his county in federal civil litigation fall within the scope of his official duty as set forth in SDCL 7–16–8 to give opinions and advice without fee to the board of county commissioners?*

Since we have already determined that SDCL 6–1–1 and SDCL 7–16–23 bar Tobin

from any recovery under his contract with Tripp County, this issue is moot and requires no further discussion here.

*V. Was the trial court's order, granting plaintiff's motion to strike equitable defenses, based on the faulty premise that the contract was void ab initio?*

Tobin argues here that the trial court was in error when it concluded his contract with Tripp County was void rather than valid or voidable only. There is no merit to this contention.

■■■ We have already determined that both SDCL 7–16–23 and SDCL 6–1–1 prohibited the contract between Tobin and the county, and that there was no exception saving him in SDCL 6–1–2(3). SDCL 6–1–1 in the last sentence declares: "Such contract shall be null and void from the beginning."

Tobin admits in his brief that where contracts are void, no equities on the part of the participants are recognized, and all equitable defenses are effectively cut off. The trial court was correct in denying the equitable defenses of laches, estoppel and quantum meruit. *Carlson, supra; Bak v. Jones County,* 87 S.D. 468, 210 N.W.2d 65 (1973).

*VI. Is a part-time state's attorney entitled to recover out-of-pocket expenses incurred in the representation of the county in federal civil litigation when legal services have been determined non-compensatory under prevailing statutes?*

■■■ Tobin urges that if this court determines that his claim for legal services was illegal under the law, he, nevertheless, should be awarded his out-of-pocket expenses totaling four thousand three hundred dollars ($4,300.00). In support of this part of his claim, Tobin cites *Zirnhelt v. Ransom,* 137 N.W.2d 785 (N.D.1965); and *Ward County v. Halverson,* 67 N.D. 520, 274 N.W. 664 (1937). A careful reading of these cases reveals no precedential support for Tobin's claim here. Neither case deals with a public contract void ab initio. Ac-

cordingly, we must conclude that Tobin is not entitled to payment of his out-of-pocket expenses since these expenses were based on a contract void in law and no equities are available in such cases as previously pointed out herein.

*VII. Does House Bill 1266 retroactively grant extra compensation to Tobin in violation of Article XII, § 3, of the South Dakota Constitution?*

The South Dakota Legislature passed House Bill 1266 in its 1983 session. The Act was entitled, "An Act to permit professional service contracts with local officers, to permit counties to contract with part-time state's attorneys for legal services outside the scope of state's attorney's statutory duties, to permit extra compensation and to limit circuit court review of county commission action to existing statutory appeals." This bill became effective on July 1, 1983. Section 8 of the bill provided that "[t]he provisions of this Act apply retroactively."

The trial court ruled House Bill 1266 unconstitutional on three grounds: (1) that its enactment has the effect of granting extra compensation to Tobin contrary to Article XII, § 3 of the South Dakota Constitution; (2) that House Bill 1266 violated the "one subject rule" contained in Article III, § 21 of the South Dakota Constitution; and (3) that the retroactive application of House Bill 1266 would deprive taxpayers of vested rights in public funds without due process of law in violation of Article VI, § 2 of the South Dakota Constitution. The trial court rejected a number of other attacks on the statute, none of which have been briefed by appellees and are therefore deemed abandoned.

■■■ There is a strong presumption in favor of the constitutionality of a statute, and this presumption is only rebutted when it appears clearly, palpably and plainly that the statute violates some provision of the state constitution. Furthermore, the party challenging the constitutionality of a statute bears the burden of proving beyond

a reasonable doubt that the statute violates a constitutional provision. *Independent Community Bankers Association v. State,* 346 N.W.2d 737 (S.D.1984); *McMacken v. State,* 320 N.W.2d 131 (S.D. 1981) overruled on other grounds by *Daugaard v. Baltic Co-op. Bldg. Supply Ass'n,* 349 N.W.2d 419 (S.D.1984). Whenever a legislative act can be construed so as not to violate the constitution, that construction should be adopted. *Kneip v. Herseth,* 87 S.D. 642, 214 N.W.2d 93 (1974). The legislature has power to pass retrospective and retroactive legislation without limit, except as to those limits imposed by constitutional restrictions. *Grand Lodge A.O.U.W. of North Dakota v. Fischer,* 70 S.D. 562, 21 N.W.2d 213 (1945).

Article XII, § 3 of the South Dakota Constitution states:

The Legislature shall never grant any extra compensation to any public officer, employe [sic], agent or contractor after the services shall have been rendered or the contract entered into, nor authorize the payment of any claims or part thereof created against the state, under any agreement or contract made without express authority of law, and all such unauthorized agreements or contracts shall be null and void; nor shall the compensation of any public officer be increased or diminished during his term of office: provided, however, that the Legislature may make appropriations for expenditures incurred in suppressing insurrection or repelling invasion.

The word "compensation" is defined in *Christopherson v. Reeves,* 44 S.D. 634, 647, 184 N.W. 1015, 1019 (1921) as follows:

We hold that the word 'compensation' as employed in section 3, art. 12, of the Constitution of South Dakota, is synonymous with salary, pay or emolument, and is intended to convey the idea of reward for, or compensation for official services[.]

■ It seems to us that House Bill 1266 is not violative of Article XII, § 3 of our constitution when applied prospectively, but when the statute seeks to apply to retroactive acts it clearly violates the express terms of the article. Article XII, § 3 declares: "The Legislature shall *never* grant any extra compensation to any public officer ... *after* the services shall have been rendered or the contract entered into[.]" (Emphasis added.) Here, the contract was entered into and the services rendered by Tobin and fully paid by Tripp County, well prior to the enactment of House Bill 1266. Article XII, § 3 prohibits bonuses in the form of extra compensation over and above that which was bargained for in the employment contract, while also prohibiting rewards after services have been rendered. *In re Opinion of the Judges,* 82 S.D. 500, 149 N.W.2d 326 (1967).

■ Tobin claims that House Bill 1266 does not provide for an increase in salary, nor for bonuses or rewards for the performance by part-time state's attorneys of their official duties. The clear wording of the Act bears this out since the Act authorizes additional compensation for legal services performed outside the scope of the state's attorney's regular statutory duties, that is, extra-official rather than official duties. These extra-official acts for which the Act authorizes extra compensation would clearly include representation of the county in courts, federal and state, outside the county boundary. They also include administrative proceedings outside the county. Since, as Tobin argues, his services were performed outside the scope of the state's attorney's statutory duties, it follows the payment therefor was not "compensation" as contemplated under our constitution. While this is true for prospective state's attorney services under the Act, it is not applicable to Tobin's case. This is so because, as earlier pointed out, Article XII, § 3 prohibits payment after the services are rendered and for the further reason that this court has already herein decided that the services he did render to Tripp County were part of his official duties, and not outside the scope thereof, and consequently, extra compensation was prohibited by SDCL 7–16–23.

Accordingly, we hold that the retroactive application of House Bill 1266 under Section 8 of the Act is unconstitutional.

*VIII. Does House Bill 1266 embrace more than one subject and embrace a subject not expressed in its title, and is it thus constitutionally prohibited legislation?*

The title to House Bill 1266 reads as follows:

An Act to permit professional service contracts with local officers, to permit counties to contract with part-time state's attorneys for legal services outside the scope of state's attorney's statutory duties, to permit extra compensation and to limit circuit court review of county commission action to existing statutory appeals.

Article III, § 21 of the South Dakota Constitution provides: "No law shall embrace more than one subject, which shall be expressed in its title."

 We just recently enunciated the general legal principles involved in attacks on constitutionality of statutes as it concerns the mandate expressed in Article III, § 21. In *Independent Community Bankers, supra,* we said that every legislative act is accorded a presumption in favor of its constitutionality and that this presumption is overcome only by proof beyond a reasonable doubt that it violates fundamental constitutional principles. Article III, § 21 does not require that the title index the contents of the Act and there is no restriction on the scope of a single subject provided it is encompassed in the title. If the provision of the Act fairly relates to the subject, it will meet constitutional requirements. Objections to a legislative act on the grounds that it embraces more than one subject not adequately expressed in its title should be grave, and the conflict between the statute and the constitution must be plain and manifest, before it may be justifiably declared unconstitutional and void. We also held that sound policy and legislative convenience dictate liberal construction of the title and the subject matter

in reviewing compliance with Article III, § 21.

There are eight (8) separate sections to House Bill 1266. The trial court determined that Sections 1, 2, 3, 4, 5 and 6 of the Act properly relate to subjects expressed in the title. However, the trial court determined that Section 7 of the Act injected a new subject, and its import was not fully expressed in the title.

Section 7 reads as follows:

That chapter 7–8 be amended by adding thereto a new section to read as follows: Appeal to the circuit court from decisions of the board of county commissioners, as provided in this chapter, is an exclusive remedy. Judicial review of county commissioner action shall be allowed only as provided in §§ 7–8–27, 7–8–28, 7–8–29, 7–8–30 and 7–8–31.

The purpose of Article III, § 21 was stated in *Independent Community Bankers, supra,* and which is consistent with a long line of our cases, to be as follows:

(1) prevent combining into one bill several diverse measures which have no common basis except, perhaps their separate inability to receive a favorable vote on their own merits;

(2) prevent the unintentional and unknowing passage of provisions inserted in a bill of which the title gives no intimation; and

(3) fairly apprise the public of matters which are contained in the various bills and to prevent fraud or deception of the public as to matters being considered by the legislature.

We have held that the single subject requirement is a direct, positive and imperative limitation upon the power of the legislature. *State v. Morgan,* 2 S.D. 32, 48 N.W. 314 (1891). Further, that where the courts of this state find that an act of the legislature contains more than one subject, it is their plain duty to declare the act of no effect and let the consequences be what they may. *Metropolitan Casualty Insurance Company v. Basford,* 31 S.D. 149, 139 N.W. 795 (1913).

House Bill 1266 purports to amend seven separate existing statutes. These statutes are: SDCL 6–1–2, SDCL 7–16–6, SDCL 7–16–18, SDCL 7–16–23, SDCL 7–16–8, SDCL 7–16–9. It adds a new section to chapter 7–8 with Section 7 of the Act governing appeals from decisions of the county board of commissioners.

The subject of a law is "the public or private concern for which the law is enacted, and all provisions of the Act must relate directly to the same subject, have a natural connection, and not be foreign to the subject as stated in the title." *McMacken v. State*, supra, at 138. This court has stated in *State v. Youngquist*, 69 S.D. 592, 594, 13 N.W.2d 296, 297 (1944), that the subject of a statute "is singular when a number of things constituting a group or class are treated as a unit for general legislation." Sections 1 through 6 clearly have a natural connection with professional service contracts with political subdivisions, and with the part-time state's attorney's duties as a public official of the county. However, Section 7 of the Act has no natural connection with the other provisions of the Act, since its effect is to limit taxpayer remedies in all cases, not only in those situations set out in the Act, but to all an asundry of taxpayer actions. Furthermore, the title of the Act does not express this subject comprehensively enough so as to put a person on notice of a germane subject in the body of the statute. *McMacken, supra*. Section 7 of the Act clearly abolishes common law taxpayers' actions for misappropriated public funds. We agree with the trial court, that by adding a new section to Chapter 7–8, declaring an appeal from county commission action as an exclusive remedy, effectively abolished common law taxpayer actions for misappropriated public funds, and that this subject was not fairly expressed in the title to the Act.

Common law taxpayer actions are of vital importance to the public at large. Without such actions, a large body of governmental activity would be unchallengeable in our courts. Section 7 of House Bill 1266

would sweep away this important right without proper notice in the title of the Act, and is therefore in violation of Article III, § 21 of the South Dakota Constitution.

*IX. Is curative legislation, enacted after judgment, permissible if it violates constitutional principles?*

We have already determined that the retroactive application of House Bill 1266 is unconstitutional so that further discussion of this issue becomes unnecessary.

Unconstitutional provisions of a statute may be extracted and the remainder left intact. *State ex rel. Wieber v. Hennings*, 311 N.W.2d 41 (S.D.1981). The "doctrine of separability" requires this court to uphold the remaining sections of a statute if they can stand by themselves and if it appears that the legislature would have intended the remainder to take effect without the invalidated section. *Hogen v. South Dakota State Board of Transportation*, 245 N.W.2d 493 (S.D.1976).

Accordingly, the judgment is affirmed for the reasons stated. Section 7 and Section 8 of House Bill 1266 are held to be unconstitutional; however, the remaining provisions of the Act are held constitutional, but may be applied prospectively only.

FOSHEIM, Chief Justice, and RAMYNKE, Circuit Judge, sitting for WUEST, Circuit Judge, Acting as a Supreme Court Justice, disqualified, concur.

WOLLMAN and HENDERSON, JJ., concur in part and dissent in part.

HERTZ, Circuit Judge, sitting for MORGAN, J., disqualified.

WOLLMAN, Justice (concurring in part, dissenting in part).

I agree with the majority opinion's dispositions of issues I and VIII.

I do not agree, however, that SDCL 7–16–23, as amended in 1977, prohibits a part-time state's attorney from receiving extra compensation for legal services performed under a contract with his county.

Prior to the 1977 amendment, SDCL 7–16–23 provided:

It shall not be competent or lawful for the board of county commissioners to give or pay any fees or costs or any part thereof to such state's attorney as part of his salary or in addition to his salary.

This statute was amended in 1977, and again in 1978, to permit part-time state's attorneys to receive fees and costs for prosecuting child support enforcement cases. These amendments were made necessary, of course, as a result of federal legislation that authorized reimbursement to those states that participated in federal programs designed to enforce more aggressively the child support obligations imposed by law upon parents. *See* SDCL 28–7–17.1. The amendments were necessary because the prosecution of child support actions has been one of the duties of state's attorneys in this state. *See* SDCL 7–16–13; SDCL 25–7–16; and SDCL 25–9A–11.

When thus read, the 1977 and 1978 amendments to SDCL 7–16–23 really did nothing to change the duties imposed upon state's attorneys by SDCL 7–16–9. As this court held in *State v. Marshall County,* 14 S.D. 149, 84 N.W. 775 (1900), the predecessor of SDCL 7–16–9 required a state's attorney to represent his county only in the courts within his county. Subsequently, several Attorneys General ruled that extra compensation to a state's attorney for representing his county outside of his county, in this court, or in federal court was not precluded by the predecessor of SDCL 7–16–9. *See* 1927–1928 Biennial Rep.S.D. Att'y Gen. 56; 1929–1930 Biennial Rep.S.D. Att'y Gen. 266; 1929–1930 Biennial Rep. S.D. Att'y Gen. 285; 1937–1938 Biennial Rep.S.D. Att'y Gen. 522; 1943–1944 Biennial Rep.S.D. Att'y Gen. 356; 1959–1960 Biennial Rep.S.D. Att'y Gen. 377.

Upon the basis of the holding in *State v. Marshall County, supra,* I would hold that the above cited opinions of the Attorney General set forth the correct interpretation of SDCL 7–16–9 and that nothing in SDCL 7–16–23, as amended in 1977 and in 1978, precluded the county commissioners of Tripp County from entering into the contract in question.

Although under my view of the case it would not be necessary for us to consider the constitutionality of House Bill 1266, I agree with the majority opinion that Section 7 of that bill was enacted in violation of South Dakota Constitution Art. III, § 21.

I am hereby authorized to state that HENDERSON, J., joins in this concurrence in part and dissent in part.